(1 App. Div. 532.)

### PEOPLE ex rel. HAVERTY v. BARKER et al.

(Supreme Court, Appellate Division, First Department.   February 14, 1896.)

1. ASSESSOR—REMOVAL—SUFFICIENCY OF EVIDENCE.
    Removal from office of a member of the board of assessors, on the charge that he was physically incapable of performing the duties of his position, is not warranted, the duty of the board being to apportion benefits and damages where street improvements are made, for which an assessment must be made, and the evidence showing merely that he was in feeble health to some extent, and slightly debilitated, and not showing that his physical incapacity in any way interfered with his performance of his duty.

2. SAME—RETURN TO WRIT OF CERTIORARI.
    The recital, in the return of commissioners to a writ of certiorari to review their discharge of a member of the board of assessors on the charge that he was physically incapable of performing the duties of his position, that their findings were based, not only on the testimony, but on the appearance of that member when before them, cannot prevent reversal of their action for insufficiency of evidence, no description of his appearance when before them being given.

3. SAME—EVIDENCE.
    On a hearing for removal of a municipal officer on the charge that he was physically incapable of performing the duties of his position, a witness cannot, instead of detailing facts, testify that he had concluded the condition of the officer interfered with the discharge of his duties.

Certiorari, on the relation of Patrick M. Haverty, against Edward P. Barker and others, commissioners of taxes and assessments of the city of New York, to review their action in discharging relator from the office of assessor.   Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

G. D. Lamb, for relator.

Theodore Connoly, for respondents.

PATTERSON, J.   On the 1st day of August, 1895, and for 10 years prior thereto, the relator held the office of assessor under the jurisdiction of the commissioners of taxes and assessments of the city of New York.   On the day named, he received a notification from such commissioners of their intention to remove him from office, upon the charge that he was physically incapable of performing the duties of his position.   He is a discharged Union soldier, and in this proceeding claims the privileges to which he is entitled by the provisions of the statutes of this state concerning veteran soldiers and sailors holding civil office.   It is proper to premise that, so far as his statutory privileges and immunities are concerned, there has been no actual or threatened violation of them by the form of the proceedings before the tax commissioners now under review.   He was duly and regularly notified of the charge. A day was appointed for a hearing.   He was represented by counsel, and every opportunity given him to have the charge fully investigated.   So that there is nothing to be imputed to the commissioners in the way of a violation of the requirements of the law respecting the conduct of the inquiry before them, as to its form.   But it is apparent from the papers brought up on the return to this certiorari that the discharge of the relator was improper upon the evidence before the commissioners.   Without deciding now what would be competent evidence in a case of this kind, and confining ourselves to a review of their proceedings as they appear now before us, it is incumbent upon this court to inquire whether, in making the determination at which they arrived, any rule of law affecting the rights of the relator was violated to his prejudice, and whether there was any competent proof of all the facts necessary to be proven to justify the determination at which they arrived.   Code Civ. Proc. § 2140.   In examining the record for the purposes mentioned, it is quite plain that not only was testimony absolutely inadmissible permitted to be given, and which necessarily must have prejudiced the relator's case, but, upon all the facts as they are made to appear, there was not sufficient competent evidence to justify the dismissal from office of the relator.   On the contrary, the inferences from what meager testimony there is, rather tend to establish competency than incompetency.   The specific charge made against the relator is set forth in a letter dated August 21, 1895, and sent to him by the commissioners of taxes and assessments through their secretary, and is in the following words, viz.:

"That, owing to your physical ailments, you are incapacitated from discharging your official duties, as contemplated by the provisions of law applicable to your position as one of the board of assessors."

This specific charge refers directly to the official duties prescribed or contemplated by the law relating to the board of assessors, by consulting which we find that that board is composed of four persons charged with the duty of making the estimates and assessments required by law for building wells, erecting pumps, pitching, paving, regulating, and repairing streets, relaying pavements, constructing sewers, fencing vacant lots and public slips and all other improvements directed by corporation ordinances, for which an assessment must be made, and that such assessors, or a majority of them, are also to make estimates and assessments, give all notices in connection therewith, receive and pass upon all objections of owners of property, and make certificates in accordance with the existing laws relative to all such matters. The practical methods by which the assessors discharge these statutory duties are somewhat vaguely and generally stated in the testimony of Mr. Jasper, who is secretary of the board, of which the relator was a member. His statement is that the actual work done by the assessors has been to determine judicially what proportion of benefit one piece of property shall bear to another in getting at the total cost of the work of improvement which is passed upon, from figures which he himself has at times made from returns from surveyors in charge of the work, and at other times from figures made by the chairman of the board, Mr. Wendt; that all these figures are submitted to the board, and an informal talk is had over them, at which they conclude upon the principle to be adopted in levying assessments; claims for damages are also brought to the attention of the assessors, objections are filed, and attorneys representing owners of property present claims for damage by affidavits of the owners; that the subjects of damage claims are taken up and considered by the assessors, who personally visit the premises claimed to be damaged, give hearings to the claimants, and decide such questions as may arise on such claims; that these proceedings are had at regular meetings, after which the assessors consult and make their determination; that, in the conduct of such proceedings, the assessors, whenever it may be necessary, interrogate the parties; that these meetings are held frequently, and that, during the year 1893 to 1894, 77 claims were presented; from August 1, 1894, to August 1, 1895, 82 claims were presented; that during the year 1895 there were 105 regular meetings of the assessors (which was about the yearly average of regular meetings), and that informal meetings occurred every day; that, at such informal meetings, various persons attended, and conversations with the assessors constantly took place. Such being the general character of the duties of the assessors, the real inquiry before the respondents was as to the incapacity of the relator to perform them, or any of them. No claim or suggestion is made of any mental incapacity on the part of the relator. On the contrary, the testimony is that he had mental

capacity to discharge the duties of his place. The only testimony respecting his physical condition is that of Jasper and another witness presently to be mentioned. The former testified that all he observed in the physical condition of the relator was feebleness, tremulousness of his hands, his requiring assistance to put on or take off his overcoat, some slowness of locomotion, and the necessity of helping him to rise from his chair when he was seated, and some difficulty in articulating when speaking. This record may be searched in vain for any other evidence of actual physical incapacity, unless it may be some very vague and inconclusive suggestions respecting difficulty of the relator in making memoranda. The cross-examination of this witness Jasper distinctly shows that nothing he claims to indicate physical incapacity has in any way, at any time, interfered with the relator's performance of his duty. In the first place, he distinctly testifies that all the work of the board of assessors was as well and as efficiently done during the year 1895 as at any previous time; that all the claims before it were passed upon as promptly during the year 1895 as before; and that no complaint was ever made, that the witness heard of, that the duties of the assessors were not properly performed, until the present proceedings were instituted. He also testifies that Haverty was at his office regularly, and that he had seen him every day at the office for 10 years. He also said that he has seen the relator walking upstairs alone, and has seen him walk across the park alone; that the relator's hearing was entirely good; that his sight was fair; that he was able to read the objections on the assessment list without difficulty; that his signature was legible, and that he made that signature three or four hundred times a year; that there was some difficulty in understanding what the relator said at first, but he never failed to understand him ultimately; and particularly does this witness testify that he cannot state specifically wherein the relator has recently shown less competency then when he originally entered upon the service of the city.

Now, it is to be noted that there is a singular absence of testimony as to any one specific thing which disqualifies this relator from performing any particular part of his work, and it is also a striking circumstance that not one single person doing business with the board of assessors has been called upon by the prosecution to give evidence respecting the condition of the relator or inability to understand him; nor has either one of his three fellow assessors been called upon to give any statement respecting his condition. There is no charge or claim or intimation that the work of either of those assessors has been augmented by any inefficiency of Mr. Haverty; but the testimony is distinct and clear that the whole work of the board of assessors was done as well, as promptly, and as satisfactorily up to the time of the relator's dismissal as during any period within the knowledge of the witnesses called by those preferring the charge against the relator. It does appear in the evidence that the clerical force of the assessors has been increased, but it also specifically appears that that was not in consequence of any delinquency or incompetency on the part of

any of the assessors to do work, but was attributable to the increased business consequent upon the normal growth and development of the city.

The only other witness who testifies upon the subject is Mr. Baer, and it is scarcely worth while alluding to what he says. He simply states that he has noticed that the relator has trouble in walking, trouble in writing, and trouble in speaking, and that it is progressive. His testimony is altogether too vague to be the basis of a finding depriving a person of his office upon the charge which has been made against this relator.

Conspicuous in this record is an error of the commissioners in admitting testimony which could not but be prejudicial to the relator, and it was objected to by his counsel. The witness Jasper was asked to tell whether or not the relator's condition has interfered with the performance of his duties, and, if so, to what extent. Instead of answering this question by detailing facts, the witness answered: "I have concluded that his present condition and his condition for some time has very much interfered with the discharge of his duties." A motion was made to strike this answer out, but the commissioners would not allow it. It is perfectly obvious that they permitted this witness to determine the very issue they were called upon to try and determine themselves, and accepted as conclusive his judgment as a determinate factor in the case. No argument is needed to show the impropriety and the injustice of such a ruling.

It will therefore be seen that there is nothing whatever in the testimony to sustain the conclusion of the commissioners. But it is argued that inasmuch as they state in their return that their findings were based, not only upon the testimony, but upon the appearance of the relator when before them, which indicated physical incapacity to do his work, their conclusion cannot be interfered with, as it is simply impossible for the court to review that which is the result of their personal inspection of the physical condition of the relator. It is very true that the court has no power to review that which was the result of such an inspection, but the record does not contain one word of description of the appearance of the relator when he was before the tax commissioners. Whether he was palsied, or a paralytic, or was in a state of decrepitude, or what physical impairment he suffered from, if any, does not appear. The testimony is utterly insufficient. There is nothing really in the case except a mere declaration of the commissioners that, upon looking at the relator, they were satisfied that he was unable to perform his duty. This cannot be allowed to prevail in a case in which, if any inferences are to be drawn at all from the testimony, they are that the relator not only was not disqualified, but that he was capable of performing, and was performing, such duties as were incumbent upon him in the office he held. That he was in feeble health to some extent, and slightly debilitated, cannot be sufficient to deprive him of his office. There must be actual inability to do the work, and not one fact is presented on this record to establish that actual incapacity.

We are therefore compelled to hold that there was not sufficient

evidence before the commissioners to justify their removal of the relator, and that their determination should be reversed, and the relator reinstated in his office as of the date of August 1, 1895, with $50 costs and disbursements.   All concur.