THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOHN W. JACOBUS, Appellant, v. ROBERT A. VAN WYCK, as Mayor of the City of New York, Respondent.

157   495
158   229
157   495
159   284
f 159   568
157   495
s 161   623
157   495
166   8
f 166   155
157   495
168 ¹   8

1. APPEAL — ORDER REFUSING MANDAMUS. Where an order of the Appellate Division refusing a writ of mandamus, appealed to the Court of Appeals, does not state the ground of decision and the writ may have been refused as a matter of discretion, the order must stand.

2. OPINION OF COURT BELOW. The Court of Appeals will not look into the opinion of the Appellate Division for the ground upon which it proceeded in refusing a writ of mandamus.

3. PUBLIC EMPLOYMENT — SCOPE OF VETERANS' ACT. The act (L. 1896, ch. 821) promoting the employment and retention of veterans in the public service of the state and its municipalities is limited in operation to subordinate positions and does not apply to the more important municipal offices.

4. NEW YORK CITY — POSITION OF ASSESSOR NOT AFFECTED BY VETERANS' ACT — SECTION 127 OF CHARTER. The position of assessor in the city of New York being not a subordinate one is not affected by the Veterans' Act; and hence an assessor in office at the taking effect of the Greater New York charter (L. 1897, ch. 378) was not entitled to retention under section 127 thereof.

*People ex rel. Jacobus* v. *Van Wyck*, 33 App. Div. 318, affirmed.

(Argued November 21, 1898; decided January 10, 1899.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered October 13, 1898, reversing an order of the Special Term granting a peremptory writ of mandamus requiring the mayor of the city of New York to assign the relator to serve as a member of the board of assessors of the city.

The facts, so far as material, are stated in the opinion.

*Henry L. Stimson* for appellant. In his position as an assessor of the old city the relator was protected by the Veteran Law, and could not have been removed except for cause. (*People ex rel.* v. *Barker*, 1 App. Div. 532; 149 N. Y. 607; *People ex rel.* v. *Barker*, 5 App. Div. 227; 150 N. Y. 570.) The position which the relator held, as assessor of the old city,

is like the position of assessor created in the Greater New York charter, within the meaning of section 127 of that charter. (*People ex rel.* v. *Gray*, 53 N. Y. Supp. 274; *People ex rel.* v. *Tobey*, 153 N. Y. 381.) The court below erred in considering that section 943 of the charter contains a specific direction to form a new board of assessors, which overrides section 127. (*McKenna* v. *Edmundstone*, 91 N. Y. 231; *Matter of Comrs. of Central Park*, 50 N. Y. 493; *Matter of the Evergreens*, 47 N. Y. 216; *B. Cem. Assn.* v. *City of Buffalo*, 118 N. Y. 61; *Van Denburgh* v. *Greenbush*, 66 N. Y. 1; *Whipple* v. *Christian*, 80 N. Y. 523; *People ex rel.* v. *Waring*, 1 App. Div. 594; *People ex rel.* v. *Waring*, 7 App. Div. 247.) The court below erred in considering that section 95 of the charter applied to relator's case. (*People ex rel.* v. *Barker*, 149 N. Y. 607; *People ex rel.* v. *Tobey*, 153 N. Y. 381; *People ex rel.* v. *Wright*, 150 N. Y. 444; *People ex rel.* v. *Board of Health*, 153 N. Y. 513.) Mandamus is the proper remedy. (*People ex rel.* v. *Vil. of Ballston Spa*, 19 App. Div. 567.)

*Theodore Connoly* and *Terence Farley* for respondent. When, from the evidence appearing in the record, on appeal from an order denying an application for a writ of mandamus, the court below might have refused the application in the proper exercise of its discretion, the appellant in this court must show, by the order appealed from, that the writ was refused on a question of law only; otherwise it will be affirmed. (*People ex rel.* v. *Jerolomon*, 139 N. Y. 14.) Where, upon a motion for mandamus, opposing affidavits are read which are in conflict with the averments in the affidavits of the relator, and notwithstanding this the relator demands a peremptory writ, it is equivalent to a demurrer, and the question as to the right to the writ must be determined upon the assumption that the averments of the opposing affidavits are true. (*Matter of Haebler* v. *N. Y. P. Exch.*, 149 N. Y. 414; *People ex rel.* v. *Mayor, etc.*, 149 N. Y. 215; *People ex rel.* v. *Brush*, 146 N. Y. 60; *People ex rel.* v. *Brookfield*, 6 App.

Div. 398; *People ex rel.* v. *Cruger*, 12 App. Div. 536.) The Veteran Acts do not apply to heads of departments, but only to those employed in subordinate positions. (*People ex rel.* v. *England*, 16 App. Div. 97; *People ex rel.* v. *Nixon*, 32 App. Div. 513; *People ex rel.* v. *Morton*, 148 N. Y. 161; *People ex rel.* v. *Adams*, 133 N. Y. 203; *People ex rel.* v. *Mayor, etc.*, 149 N. Y. 215; *People ex rel.* v. *King*, 13 App. Div. 400.) Relator is not retained in the service of the city of New York by virtue of section 127 of the charter. (*People ex rel.* v. *Gilon*, 126 N. Y. 152; *Collins* v. *Mayor, etc.*, 3 Hun, 680; *Smith* v. *Mayor, etc.*, 4 Hun, 644; *Seymour* v. *Ellison*, 2 Cow. 29; *People ex rel.* v. *Board of Police*, 75 N. Y. 41; *Rowland* v. *Mayor, etc.*, 83 N. Y. 372; *Matter of Hathaway*, 71 N. Y. 243; Mechem on Public Officers, § 8.) If the relator's contention be sound, it will effectually prevent the present mayor, or any of his successors, from removing any head of department who is a veteran " except for cause shown after a hearing had," as prescribed by the Veteran Laws. (*People ex rel.* v. *Edson*, 20 J. & S. 53; Const. N. Y. art. 10, § 3.) The position of assessor under the Consolidation Act and the office of assessor under the charter are essentially and radically different; they are in no sense of the word " like positions." (*People ex rel.* v. *Barker*, 5 App. Div. 227; 150 N. Y. 570.) The former board of assessors was abolished by the new charter, and, as the Veteran Laws only prevent the removal of veterans, who are protected by their provisions, except for cause, it is submitted that the relator is not entitled to any redress. (*People ex rel.* v. *Feitner*, 30 App. Div. 241; 156 N. Y. 694.) Relator's remedy is confined to a review by writ of certiorari. (L. 1896, ch. 821; *People ex rel.* v. *Clauson*, Law Jour., May 18, 1898; *People ex rel.* v. *Wendell*, 57 Hun, 362; *People ex rel.* v. *Comrs., etc.*, 65 Hun, 174.) A writ of mandamus will not be granted upon the application of one claiming title to an office for the purpose of determining the validity of his claim where there is a serious question in regard thereto and another person is holding and exercising the functions of the

63

· office. (*People ex rel.* v. *Brush*, 146 N. Y. 60.) If, as the relator claims, he holds the title to the office of assessor under the new charter, it is unnecessary to compel the mayor to either recognize him or assign him to serve, because all he is entitled to is the emoluments of his office. (*People ex rel.* v. *Roosevelt*, 24 App. Div. 17.) A clear legal right to a mandamus was not shown; the essential facts are controverted, and the appeal should be dismissed or the order appealed from should be affirmed. (*People ex rel.* v. *Dalton*, 24 Misc. Rep. 10; *Matter of Hardy*, 17 Misc. Rep. 667.)

Parker, Ch. J. The order appealed from must stand, because, 1st. In the language of this court in *People ex rel. D. L. I. Co.* v. *Jeroloman* (139 N. Y. 14, 18), " the order of the General Term of the Supreme Court (in this case the Appellate Division) does not state upon what ground the decision is based, and the writ may have been refused as a matter of discretion. We do not look into the opinion for the grounds upon which the court proceeds in such cases." The record discloses that the orders in the two cases are in all essential respects alike, and, therefore, the decision in *Jeroloman's* case is controlling in this one. 2nd. If the merits be open for consideration, then should the order be affirmed on the ground that the position of assessor in New York is not affected by chapter 821 of the Laws of 1896, entitled an act " respecting the employment of honorably discharged Union soldiers and sailors in the public service of the state of New York, relative to removals ? "

The relator Jacobus was in office as one of the assessors of the city and county of New York at the time that city, with Brooklyn and various other communities, became united into one municipality under and by virtue of chapter 378 of the Laws of 1897. Promptly upon the inauguration of the new city government, the mayor appointed five persons to constitute the board of assessors, as section 943 of the charter required him to do. But the appellant insists that, while the mayor obeyed that section of the statute, he disobeyed section

127 of the charter, which made it his duty to retain in like position, and under the same conditions, all persons who were at the termination of the former municipal government entitled to serve during good behavior, or who could not be removed except for cause ; that the two sections should be read together, and, reasonably construed, they mean that while the mayor has the power and it is his duty to appoint a board of assessors, still, if there should happen to be at the time of the appointment an incumbent of a similar position who was an honorably discharged veteran, then he should select that person as one of his appointees.

The question that we think is involved on this review is whether the office in controversy is within the provisions of the so-called " veteran acts." This query is important to a class, for it involves the claim of right to a continuance in office in other than subordinate positions, during life, or good behavior rather, of what has become a very large class, namely, all honorably discharged soldiers, sailors or marines, who have served as such in the Union army or navy during the rebellion, or in the Mexican war, or who shall have served the term required by law in the volunteer fire department of any city, town or village in the state. (Laws 1896, chap. 821, *supra ;* Laws 1898, chap. 184.) It is important to the public, for there are many positions in the various municipal governments in this state in which the incumbent is required to exercise a substantial measure of discretion affecting the rights and interests of a large portion, if not all, of those interested in the municipality. It has generally been deemed wise to keep the terms of such officers comparatively short, so that the people may frequently have opportunity to make changes, provided the incumbents prove unsatisfactory. And they do frequently make changes, often for the better, when, if it were necessary to make out a cause for removal for incompetency or misconduct, such a result could not be accomplished. There are occasionally men who are competent and never guilty of such misconduct as would support their removal from office, and who yet ought not to fill one, because their

conception of their own importance and special worthiness to discharge all the duties of any position without the least suggestion from others causes them to manifest such irritability at the inquiries of the timid, touching their supposed rights, as to persuade the latter to suffer small injustices rather than further prosecute their grievances. There are certainly quite enough men of this type, and of other types not much less objectionable, that could be readily suggested did the limits of an opinion permit, to justify the plan always approved by the people, of short terms for all important executive and legislative positions.

But the refusal to grant life terms, unless removed for cause, has been in part at least placed upon a broader foundation, viz., the inherent difficulty attending the removal of a public officer for incompetency or misconduct.

Individuals will ordinarily bear in silence the wrongs that an entire community suffer from one in authority, rather than take upon themselves the expense, annoyance and notoriety incident to a prosecution. And when prosecution in such a case is undertaken, it quite too often fails because the dishonor attending removal is so great as to beget great sympathy for the accused, which in turn prompts the triers to take a charitable view of the first offense and of minor offenses generally.

It is not now of much moment, however, whether the reasons leading to the establishment of short terms were well or ill founded, for it is quite certain that the rule has been thoroughly engrafted into our governmental system, and as yet no marked signs of disapproval of the settled order of things in that respect have appeared.

We approach then a consideration of the " Veteran Act," appreciating that if it does apply to the leading appointive executive officers of a municipality, it is in contravention of the general public policy on the subject, and, therefore, it should be clearly made to appear that such was the legislative intent.

Section 127 of the charter, upon which the relator relies, provides :

"*All veterans* either of the army or navy or the volunteer fire departments, *now in the service* of either of the municipal and public corporations hereby consolidated, *who are now entitled by law to serve during good behavior, or who cannot under existing law be removed except for cause,* shall be retained in like positions and under the same conditions by the corporation constituted by this act, to serve under such titles and in such way as the head of the appropriate department or the mayor may direct."

It will be observed from a reading of the statute that its purpose was to continue in the service of the city such members of the class to which it refers, as would have been entitled to continue in office had the consolidation of the several municipalities into one great municipality not been brought about by the statute of which this section forms a part. In other words, it did not attempt to add to or take from the statutes then in force and intended for the protection of veterans and others within the class, but rather to secure those who could be removed from office only for incompetency or misconduct, from being removed on the coming in of a new administration in the same city, in the event that a like position should be found in the new and greater municipality. So we are to inquire whether the office of assessor is such an office that an incumbent of it would be entitled to continue in office despite the judgment and wishes of the incoming mayor, had New York not been merged in the greater municipality. The act upon which the relator relies is chapter 821 of the Laws of 1896 and is as follows :

"SECTION 1. Section one of chapter three hundred and twelve of the laws of eighteen hundred and eighty-four, entitled 'An act respecting the employment of honorably discharged Union soldiers and sailors in the public service of the state of New York,' is hereby further amended so as to read as follows :

"§ 1. In every public department and upon all public works of the state of New York, and of the cities, counties, towns and villages thereof, and also in non-competitive exami-

nations under the civil service rules, laws or regulations of the same, wherever they apply, honorably dischârged Union soldiers, sailors and marines shall be preferred for appointment, employment and promotion ; age, loss of limb or other physical impairment which does not, in fact, incapacitate, shall not be deemed to disqualify them, provided they possess the business capacity necessary to discharge the duties of the position involved. And no person holding a position by appointment or employment in the state of New York or of the several cities, counties, towns or villages thereof, and receiving a salary or per diem pay from the state or from any of the several cities, counties, towns or villages thereof, who is an honorably discharged soldier, sailor or marine, having served as such in the Union army or navy during the war of the rebellion and who shall not have served in the Confederate army or navy, shall be removed from such position or employment except for incompetency or misconduct shown, after a hearing, upon due notice, upon the charge made, and with the right to such employee or appointee to a review by writ of certiorari ; a refusal to allow the preference provided for in this act to any honorably discharged Union soldier, sailor or marine, or a reduction of his compensation intended to bring about a resignation, shall be deemed a misdemeanor, and such honorably discharged soldier, sailor or marine shall have a right of action therefor in any court of competent jurisdiction for damages, and also a remedy by mandamus for righting the wrong. The burden of proving incompetency or misconduct shall be upon the party alleging the same. But the provisions of this act shall not be construed to apply to the position of private secretary or deputy of an official or department or to any other person holding a strictly confidential position."

Chapter 716 of the Laws of 1894, of which the act just quoted is an amendment, contained the same provision as to preferences in appointment and employment, and declared that there should be no power of removal, except for incompetency and conduct inconsistent with the position held by the employee. Shortly after the law went into effect an

employee was removed from office, the appointing officer asserting that the person removed was incompetent and his conduct was inconsistent with the discharge of his duties, that being the cause specified in the statute, and the courts held that as there did not appear to be anything in the record tending to show that the power was exercised in bad faith and contrary to the public interest, the removal should be regarded as justified. The relator in that proceeding claimed that he was, under the statute, entitled to a prior notice and hearing, but it was held otherwise. Thereupon the chapter that we have quoted above was passed for the purpose of so amending the act of 1894 as to prevent a removal until after a hearing upon due notice and upon charges made, with the right of such employee or appointee to a writ of certiorari, and this was the only important amendment. So when this court considered the act of 1894 in the case of *People ex rel. Fonda* v. *Morton* (148 N. Y. 156) it had before it this statute, so far as the question under consideration is concerned. Chief Judge ANDREWS, in delivering the opinion of the court, said of the statute: " It was intended to create a privileged class entitled to preferential employment in *subordinate positions* in the *public service*, the foundation of the preference being meritorious service, as soldiers and sailors in the war for the preservation of the Union. * * * The act applies to employees of every grade in the *public service* or on the public works of the state and the cities, towns and villages thereof. The preference is given not only in clerical or other *subordinate positions*, *but to* every person seeking public employment as a laborer on the canals or on the streets of a city, or in any capacity however humble." This interpretation of the statute is in accord with the general understanding of it, and is borne out by the title of the act, which is " An act respecting the *employment* of honorably discharged Union soldiers and sailors in the public service of the State of New York, relative to removals." Certainly the title does not suggest that public officers, vested with discretion in the performance of their duties, subject to no direction, but on the contrary empow-

ered to appoint clerks and other subordinates and fix their compensation, were intended to be affected by the statute, the purpose of which was stated in its title. And as the term "position" that the statute makes use of is an indefinite one, and may include officers or be limited to cases of employees, it is proper to refer to the title of the statute to determine its scope and intent. (*People ex rel. Westchester Fire Ins. Co.* v. *Davenport,* 91 N. Y. 574; *People ex rel. Collins* v. *Spicer,* 99 N. Y. 225; *Bell* v. *Mayor, etc.,* 105 N. Y. 139.)

Thus referring to the title, and according to it its proper weight, we readily perceive that the word "position" in the connection in which it is used, is intended to embrace all subordinate places in the public service, and that the statute is limited in its operations to those engaged in the public employment, as that term is ordinarily used, which does not include the more important municipal offices.

So far as we have observed, the view taken by Chief Judge Andrews, that the veteran acts apply only to subordinate positions, is in harmony with all judicial expression on the subject, and is not only justified but required by the statute when its provisions are read in connection with its title.

It will be difficult at times to determine whether a given position is a subordinate one or not, and possibly no rule can be laid down by which one class can always be readily distinguished from the other. But other cases need not be anticipated, as it is sufficient for our present purpose that there is no difficulty in determining that the position in question is not a subordinate one. The incumbent of the office of assessor is inferior in rank to that of the mayor by whom he is appointed, but he is not subject to the direction of the mayor, or to any one else, in the discharge of the very important and quasi-judicial duties pertaining to his office. His duties are enjoined by statute, and are within a smaller compass than those placed upon the mayor by the same act, but, within the limits defined by the statute for each officer, the one is not more independent in the discharge of his duty than the other.

The mayor has subordinates to whom he may, from time to

time, assign duties and direct the manner of their performance, but the board of assessors are not among them.   On the contrary, the latter have subordinates, and as many as they deem necessary, whom they appoint and remove, whose salaries they fix and whose duties they assign.

The provisions of the charter on that subject read as follows :

·" Sec. 943. The mayor shall appoint five persons, who shall constitute the board of assessors.   The salary of each member of said board shall be three thousand dollars a year.   The said board shall be charged with the duty of making all assessments, other than those required by law to be confirmed by a court of record, for local improvements for which assessments may be legally imposed in any part of the city of New York as hereby constituted.   The said board shall appoint a secretary and such clerks and subordinates as may be necessary, and shall fix their salaries, not exceeding in the aggregate the appropriation made for such purpose in the final estimate. The secretary, clerks and subordinates of the board of assessors, of the mayor, aldermen and commonalty of the city of New York, shall be and act as secretary, clerks and subordinates of the board of assessors herein provided for until and unless they shall be removed or superseded by the last-mentioned board of assessors."

The comptroller, corporation counsel and president of the board of public improvements constitute a board for the revision of assessments, with power to consider on the merits all objections made to any assessment.   On such revision, the board of revision may confirm an assessment, or refer it back to the board of assessors for revisal and correction in such respects as it may determine (§ 944); but it cannot in any other respect interfere with the actions, proceedings or determinations of the board of assessors.

We have thus briefly called attention to some of the reasons that have led us to the conclusion that the members of the board of assessors are not subordinates, but together they constitute an independent body, charged with the performance of

important public duties, in the doing of which they act upon their own responsibility, their acts being subject to no review except where objections are made to an assessment, when the board of revision may review their determination.

But the power of review no more makes of the assessors subordinates than, the power of review by the Appellate Division makes justices of the Supreme Court, sitting at Chambers, subordinates. The test by which to determine whether they are subordinates is not whether a review of such of their determinations as are quasi-judicial may be had, but whether, in the performance of their various duties, they are subject to the direction and control of a superior officer, or are independent officers, subject only to such directions as the statute gives. If the latter, then the officer is not a subordinate as the term is used in the decisions bearing upon this subject.

It is urged upon us that this question is no longer an open one in this court, because of the decision in *People ex rel. Haverty* v. *Barker* (1 App. Div. 532), affirmed in this court without opinion (149 N. Y. 607). But no such question was before the court or considered in that case.

The commissioners of taxes and assessments in Haverty's case were apparently of the opinion that Haverty could be removed only for cause, and after notice proceeded to take evidence as to his competency to perform the duties of his office, and at the termination of the hearing removed him.

On a review of the proceedings by certiorari the action of the commissioners was reversed because of errors upon the hearing in the admission and rejection of evidence. No other question was presented to the courts, and no claim made that the veteran acts were without application to the situation. The courts were simply asked to consider the questions presented by the exceptions taken on the hearing.

The order should be affirmed, with costs.

All concur, except BARTLETT, J., dissenting, and MARTIN, J., absent.

Order affirmed.