In the Matter of the Application of JOSEPH J. NAUGHTON, Petitioner, for an Order of Mandamus against JAMES E. BOYLE, as President of the Village of Solvay, and Others, Respondents.

Supreme Court, Onondaga County, July 8, 1927.

Villages — civil service — mandamus to reinstate petitioner as superintendent.of water and light of village of Solvay — village trustees, under Village Law, § 89, administered affairs of department of light and water — petitioner is honorably discharged soldier and exempt volunteer fireman.— petitioner held " position " within Civil Service Law, § 22 — petitioner, who was appointed for no definite term, cannot be summarily removed.

The action of the board of trustees of Solvay, N. Y., in summarily removing the petitioner, an honorably discharged soldier and an exempt volunteer fireman, from the position of superintendent of water and light of the village, to which position he was appointed for no definite term, violated section 22 of the Civil Service Law, and the petitioner is entitled to be reinstated.

The village of Solvay has no separate board of water commissioners or board of light commissioners, and the village trustees, acting under section 89 of the Village Law, administer the affairs of both departments. The petitioner held a " position,". within the meaning of that word, as used in section 22 of the Civil Service Law, and cannot, therefore, be removed from office except for incompetency or misconduct shown after a hearing upon notice upon stated charges. The petitioner was not an officer of the village of Solvay. The mere fact that the petitioner actually hired and discharged employees and generally conducted the affairs of the two departments, does not warrant a determination that he was an officer of the village.

The provision in section 223 of the Village Law, to the effect that the board of water commissioners may appoint and " at pleasure remove a superintendent to take charge of the system," must be read in connection with section 22 of the Civil Service Law, and is subordinate thereto, and, therefore, the petitioner is not subject to removal at pleasure, since he is within the class specified in section 22 of the Civil Service Law, whose removal must be made only after charges preferred and a hearing had.

MOTION for peremptory mandamus order.

*William Ryan,* for the petitioner.

*William H. Bowers,* for the respondents.

CHENEY, J. The petitioner was superintendent of water and light in the village of Solvay, an incorporated village of the first class. This village has no separate board of water commissioners or board of light commissioners, but the affairs of those two departments are administered by the board of trustees of the village, under the general powers conferred by section 89, subdivisions 16, 17 and 19, and acting as water and light commissioners

under articles 9 and 10 of the Village Law. Petitioner was first appointed in 1922, and he was thereafter reappointed annually, but the term of service was not fixed in the resolution appointing him. On the 4th day of April, 1927, he was removed from office and another man appointed in his place. No charges of incompetency or misconduct were filed against him, nor was he accorded a hearing upon any such charges prior to his removal. Petitioner was an honorably discharged soldier in the army of the United States in the World War, and had also served the term required by law in the volunteer fire department of the village of Solvay and had received a certificate of such service as provided by section 209 of the Village Law. He claims that his removal was in violation of the provisions of section 22 of the Civil Service Law (as amd. by Laws of 1924, chap. 612), and has commenced this proceeding to obtain a mandamus order reinstating and restoring him to such position.

No question of fact is raised by the answer of the respondent, and if the Civil Service Law, section 22, applies to the position held by petitioner, his removal was clearly illegal and he is entitled to be reinstated. Section 22, so far as applicable here, reads as follows: " No person holding a position by appointment or employment in the State of New York or in the  *  *  * villages thereof who is an honorably discharged soldier  *  *  * having served as such in the army  *.  *  *  of the United States  *  *  * in the world war, or who shall have served the term required by law in the volunteer fire department of any  *  *  *  village in the state  *  *  *  shall be removed from such position except for incompetency or misconduct shown after a hearing upon due notice upon stated charges.  *  *  * Nothing in this section shall be construed to apply to the position of private secretary, cashier or deputy of any official or department or change the provisions of section thirteen of the Civil Service Law."

This provision for the benefit of honorably-discharged soldiers and volunteer firemen was not a part of the original civil service system, but has been engrafted upon it by degrees for the purpose of creating " a privileged class entitled to preferential employment in subordinate positions in the public service " (*People ex rel. Fonda* v. *Morton*, 148 N. Y. 156, 162), and in 1894 this preference was extended so as to prevent removal from office except for cause. Because of the use of the indefinite term " position " in the act the courts have been frequently called upon to interpret the meaning of the word, and to determine whether or not the particular position under review was within the contemplation of the statute,

for as the court said in the *Fonda* case: " The statute recognized the principle that incompetent persons, or those whose conduct was inconsistent with the discharge of their duties, should not be retained in the public service, however meritorious their prior service may have been." Gradually there was formulated a rule to the effect that the statute is limited in its operation to subordinate positions and does not apply to the more important municipal offices. (*People ex rel. Jacobus* v. *Van Wyck,* 157 N. Y. 495; *People ex rel. Hoefle* v. *Cahill,* 188 id. 489; *Matter of Christey* v. *Cochrane,* 211 id. 333; *People ex rel. Johnson* v. *La Roche,* 111 Misc. 465.) The distinction between a subordinate position and a public office has been found to be difficult to clearly define, and an attempt was made in *People ex rel. Hoefle* v. *Cahill* (*supra*) to define a public office as follows: " The essential element in a public office is that the duties to be performed shall involve the exercise of some portion of the sovereign power, whether great or small," and the determinative feature as to whether the position involves the exercise of the sovereign power seems to be whether there is vested in the occupant of the position a discretion in the discharge of his duties or whether he merely performs routine duties in subordination to another. (See cases cited *supra*.)

To determine this question in the particular case, reference must be had to the statute under which the position is created, for it must be conceded that a public office cannot be created except by authority of the Legislature. The matter of furnishing water to a village is regulated by sections 220 to 236 of the Village Law and is in general charge of the board of water commissioners, and the matter of furnishing lights by sections 240 to 247 of the Village Law, and is under the charge of a board of light commissioners. It is alleged in the petition and admitted by the answer that in the village of Solvay there were no separate board of water commissioners and no separate board of light commissioners, and that all the functions of said boards were exercised, and still are exercised, by the board of trustees of the village. The Village Law (§ 89, subd. 19) provides that when a village has no separate board of water or light commissioners, the board of trustees has all the powers and is subject to all the liabilities and must perform all the duties of a separate board. They, therefore, derive their powers as such from the above-mentioned portions of the Village Law. It is also alleged in the petition and admitted in the answer that the power in the trustees to appoint the petitioner to the position to which he seeks to be reinstated was conferred by sections 223, 224, 243 and 244. Section 223 provides generally that if a proposition to establish water works be adopted, the board of water

commissioners shall proceed to construct such system accordingly, and may construct such water system by contract or otherwise, and may appoint and at pleasure remove a superintendent to take charge of the system and may fix his compensation. Section 224 provides that the system of water works acquired or established shall be under the supervision and control of the board of water commissioners, who shall keep it in repair and may, with certain limitations, extend the mains or distributing pipes. Section 243 provides that if a proposition to establish a lighting system be adopted, the board of light commissioners shall proceed to construct such system accordingly, and section 244 provides that the lighting system acquired or established shall be under the control and supervision of the board of light commissioners, which shall keep it in repair, have authority to purchase supplies and materials needed for the operation and maintenance of the system, and to extend it from time to time.

It will thus be seen that there is no statutory authority for the appointment of an officer under the title of superintendent of water and light, although there is for the appointment of a superintendent of water. No such office is mentioned in the list of village officers. (Village Law, § 43.) When the power and authority is given to manage and control the water and light departments, keep them in repair and extend their service, it is not probable that it was the intention of the Legislature that all the labor involved should be performed individually by the commissioners, especially as they are required to serve without compensation, and power will probably be implied in the board to employ such assistants as may be required for the proper carrying out of the duties and responsibilities committed to it, although it is a singular fact that in all the other activities of the village such power is expressly given, *e. g.*, the street department (§§ 84, 280), police (§§ 188, 188-a), fire department (§ 200).

Assuming, as I must because of the admission, that the petitioner was regularly appointed to the position, it remains to be determined whether he thereby became a municipal officer charged with governmental functions, or a mere subordinate charged with routine duties under the direction of another. Defendants claim he was an officer and point to section 223 of the Village Law, which reads: " May appoint and at pleasure remove a superintendent to take charge of the system." If the words " take charge of the system " existed alone in the statute to define the powers and duties of the board and the superintendent there would be some force in defendants' contention that the superintendent was clothed with discretionary power in the management and control of the water and

light systems.   But that statute must be read in its entirety and the legislative intent derived from the whole.   In so far as the water system is concerned, by section 224 the control and supervision is given to the water commissioners, and they are directed to keep it in repair and extend it if required, in some cases only when authorized by a vote of the electors of the village.   By section 226 the board is given authority to lay pipes in highways outside the village.   By section 227 the board is authorized to require owners of property fronting on streets in which mains are laid to make connections with the mains, or in default thereof the board may cause the work to be done and collect the expense from the owner as a local assessment.   By section 228 the board is authorized to adopt ordinances for enforcing the collection of water rents and relating to the use of water and may enforce observance thereof by cutting off water or by the imposition of penalties.   By section 229 the board is authorized to establish a scale of water rents, which are a lien on the real estate where the water is used, and is authorized to institute an action for the foreclosure of such lien, and by section 229-a, the board may determine by resolution adopted and entered in its minutes to levy and collect a frontage tax on all real property fronting on its mains, whether taking water or not, to make and correct an assessment roll of such tax, and if not paid to bring action for the foreclosure of the lien thereof.   By section 230 the board is given authority to levy an assessment for fire protection upon buildings in which water is not used and to enforce the collection thereof.   By section 232 and section 234 the board is given power to sell water outside the village and fix the price and conditions therefor.   It can hardly be said that powers so extensive as these can be delegated under a provision authorizing the appointment of a superintendent " to take charge of the system."   With regard to the lighting system, the statute (§ 244) expressly provides that it shall be under the supervision and control of the board of light commissioners, and every act in reference thereto is expressly committed to the board.   Nowhere is there any authority given for the appointment of a superintendent, or the delegation of any power to any such officer.

My interpretation of this law is that the whole responsibility for the conduct of the water and light system is charged upon the board and that with regard to the water system it is authorized to appoint a superintendent who shall act under their direction and perform the routine and ministerial duties connected therewith. In this regard this case differs from that presented in *People ex rel. Johnson* v. *La Roche* (111 Misc. 465), where under the statute creating the position the superintendent was charged with the

whole responsibility of the system, including the assessing of the water frontage tax, the collection of water rents and the fixing of the compensation of employees.

My decision in that regard is not affected by what is claimed to be a practical construction of the law by the authorities of this village in that the superintendent hired and discharged employees and fixed their compensation, purchased materials and audited the bills, made up payrolls and caused the employees to be paid. In the absence of anything to the contrary in the law, it may well be that the practical construction acquiesced in for many years will be a guide in determining the extent of the powers conveyed, but I know of no rule of law which will permit of a violation of positive law, however long continued, to effect a repeal or modification of such law. In this case such acts are contrary to the sections already cited and in so far as the auditing of the bills is concerned are also in violation of section 89, subdivision 21, and section 224-a.

Attention is called to the use of the words " and at pleasure remove," used in the Village Law (§ 223) in connection with the appointment of a water superintendent, and reliance is had upon the cases of *People ex rel. McNeile* v. *Glynn* (128 App. Div. 257) and *People ex rel. Johnson* v. *La Roche* (111 Misc. 465) to take this case out of the prohibited removal provided by the Civil Service Law (§ 22). There is apparently an irreconcilable conflict between those cases and the cases of *People ex rel. McBride* v. *Atchinson* (68 Misc. 115; affd., 142 App. Div. 927) and *Matter of Bennett* v. *Robbins* (211 App. Div. 833; affd., 240 N. Y. 553). In the first of those cases the opinion at Trial Term was written by Judge POUND, now a judge of the Court of Appeals; both of those cases are Fourth Department cases and the latter was affirmed by the Court of Appeals. In both of those cases the statute under which the appointments were made gave the appointing power the right to remove the incumbents at pleasure, and in both cases it was held that such statutes should be construed in connection with section 22 of the Civil Service Law so as to give effect to both statutes. I, therefore, feel that I am bound by these latter cases as authoritative decisions, and must, therefore, hold that the removal of the petitioner in this case was illegal.

Peremptory mandamus order as prayed for is, therefore, granted, with costs.