In the Matter of MAURICE GELLMAN, Petitioner, v. COUNTY OF NASSAU et al., Respondents.

Supreme Court, Special Term, Nassau County, January 13, 1967.

*Blumenthal, Somers & Goldstick* (*John Somers* of counsel), for petitioner. *Morris H. Schneider, County Attorney* (*Louis Schultz* of counsel), for respondents.

JOSEPH LIFF, J. On February 24, 1966, the Commissioner of the Office of Administrative Services who had appointed the petitioner to head the Bureau of Motor Equipment Management as its Director, summarily discharged him from that office. The petitioner brought this article 78 CPLR proceeding seeking his reinstatement and claiming that he could not be removed except after a hearing on stated charges as prescribed by section 75 (subd. 1, par. [b]) of the Civil Service Law.

The fact that the petitioner was classified "exempt" does not forestall his asserting his rights as a veteran, since that classification is subject to the Civil Service Law. (*Matter of Mercer* v. *Dowd,* 288 N. Y. 381, 384.)

The respondents' answer in addition to denying the material allegations of the petition, asserts by way of affirmative defenses (1) that the petitioner was an independent officer and deputy who was subject to being discharged without the hearing prescribed by section 75 of the Civil Service Law; and (2) that the petitioner was a probationary employee not in the competitive class whose services might be terminated at any time and for any reason within six months from the date of his appointment.

This court first encountered petitioner's application at the Motion Part when it was submitted on the petition, answer, supporting affidavits, other documents, etc. In its memorandum decision of November 9, 1966, this court observed:

'' The petitioner in a reply affidavit refers to a handbook which he prepared. He urges that his duties and authority were limited. However, his handbook sharply controverts that position. In this document he attributes to his position as Director of Motor Equipment Management, extensive responsibilities ' * * * for planning, developing and implementing programs centrally to provide, control, maintain and dispose of Nassau County's non-police motor vehicles and automotive type equipment.' and he enumerates his responsibilities with great particularity.

'' From it the conclusion must be drawn that he had the authority to hire and discharge personnel and assumed for himself many responsibilities, the enumeration of which might justify the conclusion that he does in fact come within the exception of §75, subdivision 1-b of the Civil Service Law. He uses words such as ' planning ', ' developing ', ' management ', ' initiating ' to describe his activities. He describes the relationship of his office with other organizations and divisions of the County, the necessity of training and developing a staff; he sets forth an organization chart indicating a personnel of 47 with himself at the head; a complex chart of ' maintenance control flow ' and other items which it would not be helpful at this point to enumerate but the foregoing illustrate the point. In one item (4.5, p. 4) he recites that his office shall maintain liaison with the New York State Department of Motor Vehicles, contact with other agencies of State and Federal Governments, local business firms, membership in related professional societies, etc., all ' as the Director deems advisable '. In an item relating to personnel (11.2, p. 7) he assumes for himself and his staff an obligation to determine ' labor efficiency and possible need for personnel adjustments.' What does this mean if not that he could ' hire and fire '.''

In directing the hearing the court followed the procedure suggested in *Matter of Behringer* v. *Parisi* (5 N Y 2d 147, 155) and *Matter of Morton* v. *Murphy* (11 A D 2d 880, 882). In a reply affidavit submitted at Special Term Part I, the petitioner said that he worked directly under the Commissioner and he described his extensive duties and responsibilities but he sought to minimize his authority by saying that he was compelled to seek the Commissioner's approval.

A brief review of additional facts might be helpful. The petitioner was first appointed to a similar position in August of 1965 and then was transferred to the Office of Administrative Services when that department was created on the following January 1. At the time of his first appointment in his own words he '' was charged with the duty of preparing the plan and organizational structure of what was to be the Bureau of Motor Equipment Management.'' In that capacity he prepared an OAS Handbook, Motor Equipment Management and Maintenance, which became available for distribution in November of 1965. This handbook described the functions of the Director of the Bureau in broad terms to plan, develop and implement programs centrally; to provide, control, maintain and dispose of Nassau County's non-police motor vehicles and automotive type equipment. It is an impressive document consisting of some 10 pages plus an organization chart of the bureau and a diagram of '' Motor Equipment Management Control Flow — County of Nassau ''.

At the hearing the petitioner testified orally that when he was first contacted in August, 1965 his duties were to implement broad policy decisions with the General Services Administration. He conducted inquiries and ascertained that he needed other help. He stated that he did not hire or discharge any employees — that in December of 1965 he submitted a list of personnel to be transferred. On February 8, 1966 he requested the transfer of a Senior Stenographer from the Department of Public Works to his department. This request was signed by the petitioner as Director of the Bureau. He compiled a list of the employees whom he desired to have employed in his department and prepared the same with a view toward budgetary requirements. On various dates between December 20, 1965 and February 17, 1966 he alone certified personnel changes in his capacity as Director of the Bureau. The Commissioner of the Office of Administrative Services authorized the petitioner, as Director, to approve claims in the bureau for which he was responsible and delegated to him the authority to approve claims for motor vehicle repairs and maintenance. The petitioner executed payroll certificates to which his signature was affixed as Director of the Bureau.

Mr. Alfred E. Moon, the Commissioner of Administrative Services, testified as to his meetings with the petitioner and the nature of the petitioner's duties. It was evident that he entrusted the organization and operation of the bureau to the petitioner whom he had named its Director.

On February 26, 1966, two days after his discharge, the petitioner wrote to the County Executive saying: "I joined your administration in August of 1965. At that time the embryonic Office of Administrative Services was faced with the task of consolidating the housekeeping activities of the Nassau County government. As indicated in the first monthly report submitted to you by Commissioner Moon of that Office, the bureau which I head has made significant strides towards achieving the objectives of the Office of Administrative Services." This is hardly the statement of a man who was subject in his every move to the direction of a superior.

To the exceptions created by section 75 of the Civil Service Law was added another by judicial interpretation; to wit, that of "independent officer" (*Matter of Behringer* v. *Parisi,* 5 N Y 2d 147, 152, 153, *supra*; *Matter of O'Day* v. *Yeager,* 308 N. Y. 580, 585). As the Court of Appeals said in *Matter of O'Day* v. *Yeager* (pp. 585–586) it is often difficult to determine whether a particular person is an independent officer or subordinate employee and each case must depend upon its own facts. The court in that decision laid down certain guidelines which it indicated were not certain but might be considered in determining whether the subject involved an independent officer, and these were (1) was his office created by statute; (2) are his powers and duties defined thereby; (3) does he exercise a high degree of initiative and independent judgment.

Let us then examine the petitioner's status with these thoughts in mind. Article XXI-A of the Nassau County Government Law (L. 1936, ch. 879, as amd. by Local Laws, 1965, No. 18 of County of Nassau) created a department to be known as the Office of Administrative Services, with a Commissioner at its head. The Commissioner was authorized to "appoint the heads of the various bureaus of the department" (§ 2150) which were established as follows:

(a) Bureau of building services;
(b) Bureau of management information;
(c) Bureau of career planning and development;
(d) Bureau of purchase and supply;
(e) Bureau of motor equipment management. (§ 2151)

The very names indicate how different were their activities. The petitioner's position was created by that section (§ 2151, subd. 2). He was named as its head and he was to be responsible to the Commissioner of Administrative Services for the functions of his bureau.

The powers of the Director of the Bureau of Motor Equipment Management were described as: " 5. The bureau of motor equipment management shall be responsible for the maintenance and repair of all motor vehicles owned by the county, shall prepare replacement schedules of vehicles and exercise supervision of the county garages."

The conclusion is inescapable that the function of the Commissioner was to serve in an administrative capacity to co-ordinate the operations of the several bureaus in the interest of an efficient and economical operation.

The separate bureaus which were created were so different from each other that, no matter how versatile a man might be the individual who found himself appointed Commissioner of Administrative Services, he could not at the one time have all the talents required to operate the five bureaus, let alone such additional bureaus as the Board of Supervisors might thereafter create. (Art. XXI-A, § 2151, subd. 1.)

Judge Dye, although dissenting from the conclusion of the majority in *Matter of O'Day* v. *Yeager* (*supra*, p. 589), found himself in agreement with the tests provided to determine an "independent officer" and expressed them as follows: " (1) that he exercise some portion of the sovereign power (*People ex rel. Hoefle* v. *Cahill*, 188 N. Y. 489); and (2) that his office and his duties be prescribed by statute and that in the performance of his major duties he be not subject to the direction and control of a superior officer or, stated affirmatively, that he be subject only to such directions as the statute gives (*Matter of Mylod* v. *Graves, supra*, 274 N. Y. 381, 384; *People ex rel. Jacobus* v. *Van Wyck, supra*, 157 N. Y. 495) ". The statute which created the petitioner's position and defined his duties sharply limited the Commissioner's authority.

We find that the facts in this proceeding meet the tests and require a determination that the petitioner was an independent officer. This finding is supported by his preparation for the position and the duties which he discharged. Certainly he exercised a portion of the sovereign power, neither great nor small, but significant.

The petitioner's application is denied; his petition is dismissed.