(14 Misc. Rep. 360.)

### PEOPLE ex rel. CONWAY v. BARKER et al.

(Supreme Court, Special Term, New York County. November, 1895.)

CIVIL SERVICE LAWS—REMOVAL OF DEPUTY TAX COMMISSIONERS.

The word "deputy" in the proviso to Laws 1888, c. 119, § 1, as amended by Laws 1892, c. 577, prohibiting the removal, except for cause after a hearing, of a veteran soldier holding an appointive position in a city, provided that this shall not apply to the position of "private secretary or chief clerk or deputy of any official or department, or to any other person holding a confidential relation to the appointing officer," applies only to a deputy having confidential relations to the appointing officer, and to whom under certain circumstances the powers and duties of such officer may be delegated—that is, one having the ordinary powers and duties of a deputy, as defined by Laws 1892, c. 681, § 9—when not expressed in the statute authorizing his appointment, and does not apply to deputy tax commissioners appointed under the consolidation act of 1882 (section 813), authorizing the commissioners of taxes and assessments to appoint deputy tax commissioners, who shall perform, under their direction and supervision, such duties as the commissioners shall prescribe, and whose duty it shall be (section 814), under the direction of the commissioners, to assess all the taxable property within the districts assigned to them, and to make a detailed statement thereof; the power to review the assessments and the duty to prepare assessment rolls being given to the commissioners alone.

Application by John H. Conway for mandamus to compel Edward P. Barker and others, constituting the board of commissioners of taxes and assessments of the city of New York, to restore relator to the position of deputy tax commissioner. Granted.

Edward Browne, for relator.

Francis M. Scott, Corp. Counsel (James M. Ward, of counsel), for respondents.

BEEKMAN, J. In the month of July, 1893, the relator was appointed to the position of deputy tax commissioner in the department of taxes and assessments of the city of New York. He entered upon the performance of his duties as such, and continued in his office until the 1st day of August, 1895, when he was removed by the commissioners, no charges against him having been preferred, and no hearing having been afforded him in respect to the cause of his removal. The facts of the case are entirely undisputed. It appears that on or about the 23d day of July, 1895, the commissioners of taxes and assessments requested the relator to resign his position, which he declined to do. Again, on the 1st day of August, 1895, the relator was present by invitation at a meeting of the board, at which he was again requested to resign, which he refused to do, stating that there was no reason why he should resign; that he had faithfully performed the duties which had been assigned to him; that he was a veteran of the late war, and as such was entitled to the protection of the law from wrongful removal. In response to this, the president of the board stated to relator that, if he did not resign, charges of incompetency would be preferred against him, to which the latter replied that any such charges would be without foundation; whereupon he was removed by the commissioners, and on the following day received

a written notice, signed by the secretary of the board, stating that at said meeting he had been removed by the board from the position of deputy tax commissioner. It also appears that the relator's claim that he was a veteran of the late war was well founded. He enlisted in the United States naval service on October 21, 1862, and was discharged on the 31st day of December, 1863. It also appears that he joined the volunteer fire department in the city of New York in the spring of 1864, and was in the service of the same until it was abolished by law.

He now moves for a peremptory writ of mandamus to compel the respondents to restore him to his position as deputy tax commissioner, predicating his motion upon section 1 of chapter 119 of the Laws of 1888, as amended by chapter 577 of the Laws of 1892, which reads as follows:

"Section 1. No person holding a position by appointment in any city or county of this state or who may hereafter be appointed, receiving a salary from such city or county (unless he has been appointed for a definite term), who is an honorably discharged soldier, sailor or marine, having served as such in the Union army or navy during the war of the Rebellion or the Mexican war and who shall not have served in the Confederate army or navy, or who shall have served the time required by law in the volunteer fire department of any city, town or village in the state, or who shall have been a member thereof at the time of the disbandment of said volunteer department, shall be removed from such position except for cause shown after a hearing had; but this provision shall not be construed to apply to the position of private secretary or chief clerk or deputy of any official or department, or to any other person holding a confidential relation to the appointing officer."

It is therefore perfectly plain that, unless the relator comes within the exception expressed in the statute, his right to reinstatement is clear. The counsel for the respondents, however, contends that he does come within the proviso which expressly excepts deputies from the operation of the act, for the reason that the statute which creates the office or position which was held by the relator prescribes that the incumbent shall bear the title of deputy tax commissioner. This contention, however, proceeds upon too narrow a construction of the statute. The court is not tied down to a literal interpretation, but has a right to inquire into the reason for the enactment, and to consider the purpose which the legislature sought to accomplish; and, when this is revealed, the living principle of the law is discovered, and an unerring guide is found for its correct application.

The rule is well stated in People v. Lacombe, 99 N. Y. 43, 1 N. E. 599. It is there said, at page 49 of the opinion (99 N. Y., and page 599, 1 N. E.):

"In the interpretation of statutes, the great principle which is to control is the intention of the legislature in passing the same, which intention is to be ascertained from the cause or necessity of making the statute as well as other circumstances. A strict and literal interpretation is not always to be adhered to, and, where the case is brought within the intention of the makers of the statute, it is within the statute, although by a technical interpretation it is not within its letter. It is the spirit and purpose of a statute which are to be regarded in its interpretation; and, if these find fair expression in the statute, it should be so construed as to carry out the legislative intent, even although such construction is contrary to the literal

meaning of some provisions of the statute. A reasonable construction should be adopted in all cases where there is a doubt or uncertainty in regard to the intention of the lawmakers."

We are therefore at liberty to consider whether a deputy tax commissioner, although a "deputy" so styled, is still a deputy within the meaning of the veteran law, and therefore excepted from the benefits of the act under which the relator claims reinstatement. A "deputy" is defined by Webster to be "one appointed as the substitute of another, and empowered to act for him in his name or on his behalf." He also states:

"Deputy is used in composition with the names of various executive officers to denote an assistant empowered to act in their name, as deputy collector, deputy marshal, deputy sheriff."

The following definition is also found in 5 Am. & Eng. Enc. Law, p. 623:

"A deputy is one who, by appointment, exercises an office in another's right, having no interest therein, but doing all things in his principal's name, and for whose misconduct the principal is answerable. He must be one whose acts are of equal force with those of the officer himself, must act in pursuance of law, perform official functions, and is required to take the oath of office before acting."

Again, we find in chapter 681 of the Laws of 1892, styled the "Public Officers' Law," a statement of the powers and duties of a deputy which is in harmony with the definitions above given. By section 9 of the law above mentioned, it is provided, among other things, as follows:

"Every deputy, assistant or other subordinate officer, whose appointment or election is not otherwise provided for, shall be appointed by his principal officer, board or other body, and the number thereof, if not otherwise prescribed by law, shall be limited in the discretion of the appointing power. If there is but one deputy, he shall, unless otherwise prescribed by law, possess the powers and perform the duties of his principal during the absence or inability to act of his principal, or during a vacancy in his principal's office. If there be two or more deputies of the same officer, such officer may designate, in writing, the order in which the deputies shall act, in case of his absence from the office or his inability to act, or in case of a vacancy in the office, and if he shall fail to make such designation, the deputy longest in office present shall so act."

Where, therefore, any statute of the state authorizes a public officer to appoint a deputy, but fails to express his powers, this general law supplies a definition. We would therefore naturally expect to find, as we do, such officers included in any statutory provision dealing with public servants standing in a confidential relation towards an official superior. The function of a deputy, possessing the power, as he does, under certain circumstances, to act as if he were himself the actual incumbent of his principal's office, implies a correlative duty and right on the part of the principal to exercise an unfettered personal selection in the appointment of such a subordinate, and also a corresponding freedom in exercising the power of removal whenever his confidence in the integrity, capacity, trustworthiness, or adaptability of his subordinate is in the least shaken. He should not be called upon to specify the grounds of his dissatisfaction, still less to make proof of charges when his objection, though substantial, may

rest, as is frequently the case, upon moral evidences only, or upon well-grounded suspicion, equally destructive of that confidence which is of the very essence of the relation. It is also apparent from the context of the statute in question that the word "deputy" was used in this sense. The other employés or officers in the enumeration of those excepted from the operation of the act hold places commonly understood to be confidential in their nature, and that they were so regarded by the legislature is made certain by the fact that the specific enumeration is followed by a general clause including "any other person holding a confidential relation to the appointing officer." The principle, "Noscitur a sociis," applies.

We are thus naturally led to a consideration of the nature of the office of deputy tax commissioner, for the purpose of determining whether he is such a deputy in the sense of standing in a confidential relation towards the commissioner of taxes and assessments. Section 813 of the New York City consolidation act of 1882 authorizes the commissioners to appoint persons to be known as "deputy tax commissioners," who shall perform, under their direction and supervision, such duties as the commissioners shall prescribe. They shall hold their office during the pleasure of the said commissioners. By section 814 of the same act it is declared that:

"It shall be the duty of the deputy tax commissioners, under the direction of the commissioners of taxes and assessments, to assess all the taxable property in the several districts that may be assigned to them for that purpose by said commissioners, and they shall furnish to them, under oath, a detailed statement of all such property showing that said deputies have personally examined each and every house, building, lot, pier, or other assessable property, giving the street and ward map number of such real estate embraced within said districts, together with the name of the owner or occupant, if known; also, in their judgment, the sum for which such property under ordinary circumstances would sell, with such other information, in detail, relative to personal property or otherwise as the said commissioners may from time to time require. Such deputies shall commence to assess real and personal estate on the first Monday of September in each and every year."

It will thus be seen that certain specific duties are directly cast by the statute upon deputy tax commissioners, for the due performance of which they are responsible to the public; and that, while their duties are to be performed under the direction of the commissioners, such direction, from the nature of the case, cannot involve any interference on the part of the commissioners with their duties, in so far as the legislature has expressly provided that certain acts must be performed by them. The duties they are thus required to perform are their own, and not those of their immediate superiors, who have therefore deputed nothing. The assessment of the real and personal property within the city and county of New York, as the statute expressly declares, must be made primarily by the deputy tax commissioners themselves. By section 817 of the consolidation act, the commissioners of taxes and assessments are required to keep in their office books to be called "the annual record of the assessed valuation of real and personal estate," in which shall be entered in detail the assessed valuations of such property within the city and county of

New York, which books are to be open for examination and correction from the second Monday of January until the 1st day of May in each and every year. During that period the commissioners themselves, and they alone, have full power to review the assessments which have been made, and to make such changes therein as the justice of the case may require; and when the books are closed, on the 1st day of May, it then becomes their duty, and theirs alone, to prepare assessment rolls for delivery to the board of aldermen for the levy of the tax. It is quite plain that none of the deputy tax commissioners can perform the duties of the commissioners themselves in respect to a review of the assessments which have been made, or in the preparation and delivery to the board of aldermen of the assessment rolls. The commissioners themselves, in the performance of these duties, can only act together in a so-called "corporate capacity," sitting as a board,—a duty which it is quite clear no deputy could perform; and while it is true that, under section 813 of the consolidation act, the deputy tax commissioners are required to perform "such duties as the commissioners shall prescribe," it would be a most unreasonable and inadmissible construction to hold that this authorized the tax commissioners to delegate their judicial functions to the deputies. The power to delegate the performance of such duties can only be found in a statute where the intention to authorize it appears beyond question; and it is needless to say that in this case no such intention is disclosed, nor has it ever practically been assumed to exist. Nor does the fact that the tax commissioners may require the deputies to perform any duties which they may prescribe make the office a confidential one. Such power rests in every public officer who is authorized to employ subordinates to enable him properly to discharge his duties, so that the acceptance of any such interpretation as this would necessarily involve the absurdity of holding that all employés who are under the control of a head of a department stand in a confidential relation towards him, within the meaning of this statute. People v. Sutton, 88 Hun, 171, 34 N. Y. Supp. 487. As was said in that case, which arose under the same statute (chapter 577, Laws 1892):

"In order to fall within the exception of the statute, the relations between the clerk and the appointing power must be of a personal nature. The performance of official duties does not establish a confidential relation to the head of the department."

I think it will be found upon an examination of the laws particularly relating to the city and county of New York that wherever it was intended to provide for a "deputy," in the proper sense of that word, the confidential function of the officer plainly appears upon the face of the statute. In the case, however, of the deputy tax commissioners, there is absolutely nothing which expresses the slightest purpose on the part of the legislature to place them, or any of them, under any circumstances, in the position of their official superiors, or to confer upon them the right, at any time, to perform any of the functions immediately belonging to the board of commissioners which constitutes the head of the department of taxes and assess-

ments. How, then, can it be said that these deputy commissioners stand in any confidential relation towards the head of the department? And how can they be regarded as deputies standing in a confidential relation to the appointing power when none of the duties of the latter can be deputed? It is not enough that the legislature has seen fit to call them "deputies"; it must further appear, in order to bring them within the exception of the statute under consideration, that they are deputies, standing as such in a confidential relation to their chief. In re Ostrander, 12 Misc. Rep. 476, 34 N. Y. Supp. 295.

I am therefore of the opinion that the relator was not a deputy within the meaning of the statute above referred to, and that consequently he could not be removed except for cause after hearing had. I think it is plain from the facts that the removal was made, or attempted to be made, on the ground of incompetency. Under such circumstances, the relator was entitled to a reasonable notice of the delinquincy with which he was charged, and of the time and place where a hearing would be accorded. As this was not done, the removal was unlawful, and he is therefore entitled to reinstatement. The motion for a peremptory writ of mandamus is therefore granted, with costs.