In the Matter of J. BAXTER SMITH, Petitioner, against BOARD OF STADIUM AND MEMORIAL AUDITORIUM OF THE CITY OF BUFFALO et al., Respondents.

Supreme Court, Special Term, Erie County, March 6, 1948.

*Alexander Taylor* for petitioner.

*Fred C. Maloney, Corporation Counsel (Gerald J. Shields* and *Edward J. Ruehl* of counsel), for respondents.

WILLIAMS, J. Petitioner seeks an order under article 78 of the Civil Practice Act, reinstating him to his former position of " Director of Stadium and Memorial Auditorium " of the City of Buffalo, New York.

He is an honorably discharged veteran of World War I and contends that under subdivision 1 of section 22 of the Civil Service Law, he could not be removed except for incompetency

or misconduct shown after a hearing. No such hearing was had. It is contended by respondents that petitioner was a " deputy " and therefore specifically excepted from the protection of subdivision 1 of section 22 and that, in any event, he is not a subordinate employee and does not come within the protective provisions of said section.

Petitioner was appointed May 15, 1942, under section 109-b of the Charter of the City of Buffalo (Local Laws, 1937, No. 2 of City of Buffalo, as amd. by Local Laws, 1940, No. 9 of City of Buffalo), which provides as follows: " § 109-b. *Duties and Powers.* The board of stadium and memorial auditorium shall be charged with the control, management and operation of the civic stadium and memorial auditorium and of such other similar activities of the city as may hereafter be delegated to it by law or ordinance. The board shall appoint and at pleasure remove a director of the stadium and memorial auditorium, who shall be the chief executive officer of the board of stadium and memorial auditorium and shall, subject to its direction, have supervision and management of the affairs of the division of stadium and memorial auditorium and of its employees, and shall appoint such other persons to positions as shall be provided by ordinance. The board may from time to time enact orders, rules and regulations, not inconsistent with general law or any local law or ordinance for the regulation of its activities and the government and discipline of its officers and employees. It shall, subject to approval by resolution or ordinance of the common council fix and establish a schedule of charges for the use of the stadium and memorial auditorium, or any part of either, by persons, associations or corporations, and issue permits for such use in accordance with its rules and regulations and such schedule of charges."

At that time and throughout his term section 71 of said charter provided in part as follows: " The head of each department shall appoint and may at pleasure remove each deputy and head of a division of the department. * * * The head of each division of any department and the principal executive officer of any board constituting the head of a department shall be deemed deputies and are authorized to act generally for and in place of their principals."

Section 109 of said charter provided: " *Board of stadium and memorial auditorium.* The board of stadium and memorial auditorium shall be the head of the division of stadium and memorial auditorium."

Petitioner was removed from office at a meeting of the said board on January 12, 1948, without a hearing and without cause.

The position was undoubtedly in the exempt class under subdivision 1 of section 13 of the Civil Service Law. It was definitely placed in that class by rule 5 of the Rules for the Classified Civil Service of the City of Buffalo issued by the municipal civil service commission of the city of Buffalo, which provides in part: " Rule 5. *The Exempt Class.* The exempt class shall include: 1. The deputies of principal executive officers, authorized by law to act generally for and in place of their principals. * * * The following positions shall be included in the exempt class * * * Director of Stadium and Memorial Auditorium."

Petitioner claims that he was improperly placed in the exempt class because his duties and responsibilities did not warrant it. However, this point seems of little materiality, except as to the city's comprehension of the duties, responsibilities and authorities of the position, because the courts have held that a veteran, actually in a subordinate position, may invoke the section even though in the exempt class, unless he is specifically excluded by the last sentence of the said subdivision 1 of section 22 of the Civil Service Law, which reads: " Nothing in this subdivision shall be construed to apply to the position of private secretary, cashier or deputy of any official or department." (*Matter of Mercer* v. *Dowd,* 288 N. Y. 381; *Matter of Rohr* v. *Kenngott,* 288 N. Y. 97; *Matter of Mylod* v. *Graves,* 274 N. Y. 381.)

If petitioner was a deputy, he was specifically excepted by the above-quoted sentence from said subdivision 1 of section 22 of the Civil Service Law. Our courts have upheld these exceptions. (*Matter of Byrnes* v. *Windels,* 265 N. Y. 403; *Matter of Glassman* v. *Fries,* 271 N. Y. 116.)

In determining whether he was in fact a deputy we must look to his duties and authorities. He is not a deputy merely because he is called one. " We are, therefore, called upon to determine whether the relator was a deputy, with corresponding duties, and designated as such by statutory provision. Merely calling him a deputy is not alone sufficient unless the duties of deputy apply to his office and are specified by some act of the Legislature." (*Matter of Byrnes* v. *Windels, supra,* p. 406. See, also, *Matter of Mercer* v. *Dowd, supra,* p. 385.)

The term " deputy " is defined in the Standard Dictionary (Funk & Wagnalls Co.) as " One authorized to act for or in place of another, especially in official relations. A deputy may be

*general,* as empowered to act with the full authority of his principal, or special, as limited to certain duties.''

In Bouvier's Law Dictionary (Rawle's 3d Revision) a deputy is defined as, '' One authorized by an officer to exercise the office or right which the officer possesses, for and in place of the latter.''

Section 109-b of the Buffalo City Charter above quoted, states that petitioner's former position was that of ''a *director* of the stadium and memorial auditorium, who shall be *the chief executive officer* of board of the stadium and memorial auditorium and shall, subject to its [the board's] direction, have *supervision and management of the affairs* of the division of stadium and memorial auditorium *and of its employees* * * *. The board may from time to time enact orders, rules and regulations, *not inconsistent with* general law or *any local law or ordinance* for the regulation of its activities and the government and discipline of its officers and employees.'' (Italics ours; matter in brackets supplied by us.)

Section 109-c of the Charter of the City of Buffalo provides: '' The board of stadium and memorial auditorium shall hold stated meetings at least twice a month and as much oftener as the board determines, and the chairman may call special meetings.''

No member of the board receives any compensation or salary from the City of Buffalo.

Thus it appears, that by local law, petitioner was not only a deputy authorized to act generally for and in place of his principals (members of the board) (Buffalo City Charter, § 71) but he was director of the stadium and memorial auditorium, its chief executive officer and supervisor and manager of its affairs and employees. (Buffalo City Charter, § 109-b.) Therefore, he had not only the broad general powers of deputy, but he was vested at all times, by virtue of said section 109-b, with the powers and duties specified therein. This is more marked when section 109-c is considered, which shows clearly that the board was not expected to be in constant attendance or supervision but was to meet twice a month or sooner if so determined to decide matters of general policy or the larger or more important matters. This does not in any way detract from petitioner's duties or authority, especially as the board may not at any time enact orders, rules or regulations '' inconsistent with * * * any local law.'' In other words, they could not abridge his powers under the very section under which he was appointed (Buffalo City Charter, § 109-b) or under section 71 of the Buffalo City Charter.

Petitioner claims that because of the words " subject to its direction " in section 109-b, his position became subordinate to the board. Merely because the board reserved *some* control of certain matters did not destroy his deputyship. He need not be a deputy in all things if he was, in fact, a deputy in some (*Matter of Byrnes* v. *Windels, supra; Matter of Mylod* v. *Graves, supra*).

It might as well be said that the president of a stock corporation holds a subordinate and not a supervisory position, merely because, under section 60 of the Stock Corporation Law, his duties are " subject to the control of the directors ".

We can but conclude that petitioner was a deputy, completely authorized as such by statutes constituting local law. He had all the power and authority of a deputy. He may have acted as a deputy and he should have acted as one in the fulfillment of his duties and responsibilities. Therefore, he was a deputy.

As was said in *Matter of Byrnes* v. *Windels* (*supra,* p. 409) : " The Corporation Counsel may appoint an assistant but when once appointed, that assistant may have the **power** and authority which is thus given him by statute. In other words, he may become a deputy."

Although we feel that our finding that petitioner was the deputy of the board, is, in itself, decisive of this controversy, there have been other questions raised which require further comment.

In support of his contention that he was a subordinate employee, petitioner, by permission of the court, and after the answer had been served, filed an affidavit supposedly outlining certain of his duties. This affidavit was not timely and may not properly have been before the court (*Matter of Griffin* v. *Williams,* 168 App. Div. 63, appeal dismissed 216 N. Y. 651). Nevertheless, for the purposes of this memorandum we shall give it the same weight it would be entitled to receive had it been served with the petition.

The affidavit sets forth many of his so-called " duties ", some of which are clearly subordinate and some of which might well be supervisory. It should be noted that the items set forth are claimed to be " *among* " his duties as Auditorium Director (italics ours).

There is no statement in the affidavit that these are all of his duties. It seems to be very carefully worded in that respect.

The fact that some of his duties were or could have been subordinate is not determinative. Almost every executive per-

forms some subordinate or clerical functions; at least they would be deemed subordinate if performed by one in a subordinate position.

In *Matter of Mylod* v. *Graves* (*supra*) petitioner contended that many of his duties were more or less ministerial and clerical. In respect of this contention, the court said (p. 387): " It is true there are other matters connected with the opening of safe deposit boxes and the preservation of the assets, which make the duties of the Appraiser more or less ministerial and clerical. However, his main duties are those of an independent official acting in a quasi-judicial capacity and determining the values of estates to be taxed, independent of supervision, of direction or control by the appointing powers. The President of the Commission appoints him to the office; the Surrogate selects him for action. His determination is independent of both, but it may be reviewed by the Surrogate upon objection being filed by the Commission. Just where the dividing line is between an official and a subordinate in order to mark off the application of section 22 of the Civil Service Law is not always an easy matter to determine. In 1907 the position of Tax Assessor was held to be an office by the Supreme Court, Special Term, of Albany county, in *People ex rel. McKnight* v. *Glynn* (56 Misc. Rep. 35). Apparently this court has not found a rule which can be easily and automatically applied. Each case must be determined upon the facts. The principle, however, is clear."

The last paragraph of said affidavit contains the broad general conclusion: " I am a subordinate to the board and perform my duties ' subject to its direction ' ". This is not a statement of fact as required by section 1288 of the Civil Practice Act. It is the petitioner's conclusion and will be disregarded.

Many facts are stated in the answer which show that petitioner was not a subordinate employee. No reply was served; therefore, these allegations of the answer stand admitted, except as they are controverted by the petition and petitioner's affidavit. (Civ. Prac. Act, § 1292; *Matter of Murphy* v. *Delaney*, 179 Misc. 436; *Moreland* v. *Areson*, 22 N. Y. S. 2d 309.)

An analysis of the petition, petitioner's affidavits, the answer and the provisions of the local laws creating said position and defining its powers and authority, leads to the inevitable conclusion that petitioner was not a subordinate employee and thus is not protected by subdivision 1 of section 22 of the Civil Service Law, on that ground, for even though he were not technically a " deputy " he still could not avail himself of that statute unless he held a subordinate position. We quote again from *Matter*

of *Byrnes* v. *Windels* (*supra,* p. 407): " In *People ex rel. Jacobus* v. *Van Wyck* (157 N. Y. 495) it was held that the veterans' provisions only applied to subordinate positions * * * "

In *Matter of Christey* v. *Cochrane* (211 N. Y. 333) it was held that the office of auditor of the city of Buffalo was not a subordinate position and reinstatement was denied. (See, also, *People ex rel. Jacobus* v. *Van Wyck*, 157 N. Y. 495.)

Petitioner argued at length that *Matter of Mercer* v. *Dowd* (*supra*) supported his position. We do not so find. In that case respondents claimed petitioner was a " secretary " and thus excluded from subdivision 1 of section 22 of the Civil Service Law. The court determined that he was not a secretary but that his duties were those of a superintendent of parks. The court then determined that he was not *an independent* officer, but that he was " under the control of and subordinate to the respondents ". And further: " The Commission created the position from which the appellant has been removed, and determined the duties thereof. By like authority the respondents adopted by-laws, one of which defined the functions of the appellant's former position as: ' * * * such duties as the Commission may from time to time direct ' ". (P. 386.)

This case is vastly different from the one before us where the position was created by local law, he was made a deputy by local law, certain of his executive duties were prescribed by local law and the board was prohibited from enacting orders, rules or regulations inconsistent with such local laws (Buffalo City Charter, § 109-b).

In paragraph 5 of the petition, it is alleged that the board voted to remove petitioner " at an irregular and unlawful meeting of the Board * * * " and that three members voted to remove him and two voted against his removal. This is a five-man board. Therefore, the petition shows affirmatively that all were present. Moreover, this broad general conclusion, not supported by any facts, is controverted by facts in the answer to which no reply has been served, as aforesaid. This is insufficient to raise the issue as to legality or regularity of the meeting.

Inasmuch as petitioner has raised no triable issue of fact, the petition is dismissed on the merits, without costs.

Submit order.