THOMAS D. HEATH, Petitioner, *v.* EUGENE T. CREAGH, as City Manager of the City of Niagara Falls, et al., Respondents.

Supreme Court, Special Term, Niagara County, May 18, 1949.

538

*John F. McNulty* for petitioner.

*George M. Donahue, Corporation Counsel,* for respondents.

HALPERN, J. This is a proceeding under article 78 of the Civil Practice Act for the reinstatement of the petitioner as deputy director of public works of the city of Niagara Falls. The petitioner was appointed to that position by the city manager of the city of Niagara Falls on January 6, 1948, pursuant to the provisions of the city charter authorizing the city manager to make such appointment. The appointment was made without examination, either competitive or noncompetitive, the position having been classified by the municipal civil service commission in the exempt class.

On January 1, 1949, the petitioner was summarily removed from office without any charges having been preferred against him and without any hearing.

The petitioner is an honorably discharged veteran of World War II and he claims to be entitled to the protection of subdivision 1 of section 22 of the Civil Service Law, which provides in substance that a veteran may not be removed from a position or office in the civil service except after a hearing upon charges.

The respondents maintain that section 22 of the Civil Service Law is not applicable to the petitioner and that they had the right to remove the petitioner without a hearing.

In examining this contention, it should be noted, first of all, that it is now settled that the fact that the position is in the

exempt class does not of itself deprive the holder thereof of the benefit of the veterans' protection provision of section 22. The Court of Appeals has declared that positions in the exempt class are included in the protection afforded by section 22 to honorably discharged veterans. (*Matter of Fornara* v. *Schroeder*, 261 N. Y. 363.)

However, the veterans' protection obviously cannot be extended to all positions in the exempt class. Many of them are independent offices rather than subordinate positions and the courts have recognized that the appointing authority ought to be free to remove the holders of independent offices without being subject to the restraints of section 22. It is well settled that " Section 22 of the Civil Service Law was intended to apply only to those holding positions of a subordinate nature " and not to independent officers (*Matter of Mylod* v. *Graves*, 274 N. Y. 381, 384).

Furthermore, subdivision 1 of section 22 specifically provides: " Nothing in this subdivision shall be construed to apply to the position of private secretary, cashier or deputy of any official or department."

There are therefore two questions to be resolved in this case: (1) Was the position held by petitioner of a subordinate nature or was it an independent office? (2) Was the petitioner a deputy of an official or department within the meaning of the exclusionary sentence of section 22 quoted above?

The answer to the first question presents little difficulty. It is evident that the petitioner's position was one of a subordinate nature and not an independent office.

" The test by which to determine whether they are subordinates is * * * whether, in the performance of their various duties, they are subject to the direction and control of a superior officer, or are independent officers, subject only to such directions as the statute gives. If the latter, then the officer is not a subordinate as the term is used in the decisions bearing upon this subject." (*People ex rel. Jacobus* v. *Van Wyck*, 157 N. Y. 495, 506.)

The statute here involved (Local Laws, 1947, Nos. 5 and 6 of City of Niagara Falls, amdg. Niagara Falls City Charter [L. 1916, ch. 530]) provides for the appointment by the city manager of a director of public works and two deputy directors of public works. The statute prescribes the powers and duties of the director of public works in considerable detail, but there is no specification of the nature of the duties of the two deputy

directors. Their duties are left entirely to the discretion of the director of the department.

The duties of the director of public works are set forth in section 118 of the charter, as amended, as follows: " Pursuant to the provisions of this act and under the direction of the city manager the director of public works shall be the head of the department of public works and have direction and control of the employees of said department. He shall have cognizance, direction and control of such matters as relate to the streets, alleys, ways, sidewalks, bridges, sewers and drains, and the public places belonging to said city, except school and public library buildings and parks of said city, as may from time to time be assigned to him by the city manager, and he shall, under such direction, have the management and control of the collection and disposition of the city garbage, ashes and refuse. He shall also, under the direction of the city manager, have charge of the maintenance and repair of the automobiles, trucks, machinery and motor equipment of the city."

In view of this statutory definition of the director's duties, it may be assumed for the purpose of the present case, that the director is an independent officer, despite the fact that he is subject to the direction of the city manager. There is no similar statute vesting independent duties in the deputy directors.

In his answer and accompanying affidavit, the director of public works asserts that he assigned substantial duties to the petitioner and virtually made him the head of that division or bureau of the department which was charged with the supervision and control of " automotive repairs, municipal incinerator plant, municipal welding shop, municipal asphalt plant and sewer repairs ". The director also gave the petitioner " the right to requisition labor from the Municipal Civil Service Commission; power to discharge, in his judgment and discretion, unsatisfactory employees; and to requisition materials required for his Department ".

However, as has been pointed out above, there was no statutory basis for this assignment of duties. The assignment was wholly in the discretion of the department head and could be withdrawn by him at will. The assignment merely constituted a practical working arrangement adopted by the director for the day-to-day operation of the department.

Respondents place great emphasis upon the fact that the shops and plants which were placed by the director under the petitioner's supervision were those formerly associated with

the " Corporation Yard ", the head of which had been treated as a department head, holding an unclassified position in the civil service.

Whether this assertion is in strict accordance with the facts is, to some extent, the subject of controversy but, even if the statement is accepted as true, it does not aid the respondents' position. Whatever may have been the status of the former " Corporation Yard ", it is clear that the effect of Local Law No. 6 of 1947 was to abolish the corporation yard as a separate department and to place the operation thereof under the director of public works. The director himself is the department head, equivalent to the head of the former department, referred to as the corporation yard. The subordinate to whom the director assigned the duties formerly associated with the corporation yard did not thereby become a department head or independent officer, since the assignment was not one made by, or pursuant to, statute. He remained a subordinate, performing duties assigned to him at the will of the department head. The decision of Justice ALGER A. WILLIAMS in *Matter of Smith* v. *Board of Stadium and Memorial Auditorium of Buffalo* (197 Misc. 529), upon which the respondents rely, is clearly distinguishable in this respect. In that case, the duties of the director of the stadium and memorial auditorium were specifically prescribed by the charter. The charter (Buffalo City Charter, § 109-b; Local Law No. 4, 1927 [published in Local Laws, 1932, p. 21], as amd. by Local Law No. 2, 1937, as amd. by Local Law No. 9, 1940) provided that the director " shall be the chief executive officer of the  *  *  * stadium and memorial auditorium and shall, subject to its [the board's] direction, have supervision and management of the affairs of the division of stadium and memorial auditorium and of its employees ".

The board was authorized to adopt rules and regulations " not inconsistent with general law or any local law or ordinance ", so that it was clear under the charter that, once the director was appointed, his powers and duties were fixed by the charter and could not be altered or revoked by the board. In the present case, the powers and duties of the deputy director of public works, no matter how extensive they might be from time to time, were always subject to withdrawal or revocation by the director of the department and were not based upon any statutory authority.

It is therefore clear beyond question that the deputy director was not an independent officer, but was a subordinate within

the meaning of the cases. (*Matter of Mylod* v. *Graves, supra*; *People ex rel. Jacobus* v. *Van Wyck, supra*; *Matter of Mercer* v. *Dowd,* 288 N. Y. 381.)

The question of whether the position held by the petitioner was that of a deputy within the meaning of the last sentence of subdivision 1 of section 22 of the Civil Service Law is a much more difficult one. The courts have had considerable difficulty in drawing the line between subordinates who are deputies within the meaning of the provision of section 22 here referred to and those who are not such deputies.

First of all, it should be noted that the title of the position is not controlling. Calling a person a deputy does not necessarily make him one within the meaning of this provision (*Matter of Steen* v. *Nassau County,* 179 Misc. 821, affd. 265 App. Div. 858; see, also, *Matter of Rohr* v. *Kenngott,* 288 N. Y. 97, in which the Court of Appeals held that a cashier in the Erie County Clerk's office was not necessarily a cashier within the exclusionary provision of section 22).

" Merely calling him a deputy is not alone sufficient unless the duties of deputy apply to his office and are specified by some act of the Legislature." (*Matter of Byrnes* v. *Windels,* 265 N. Y. 403, 406.)

" The mere use of the word ' deputy ' may not in and of itself create the exception. Thus, in *People ex rel. Ryan* v. *Wells* (178 N. Y. 135) a Deputy Tax Commissioner was held not to be a deputy, but a subordinate official. (See, also, *People ex rel. Conway* v. *Barker,* 14 Misc. Rep. 360.) * * * In other words, the position cannot be classed as a deputyship by the head of the department by the mere use of the word.

" A ' deputy ' has been defined by the Standard Dictionary (Funk & Wagnalls Co.) as ' One authorized to act for or in place of another, especially in official relations. A deputy may be *general,* as empowered to act with the full authority of his principal, or *special,* as limited to certain duties.' In ' Words and Phrases Judicially Defined,' ' the term *deputy* means " one who is appointed, designated, or deputed to act for another." (*Willis* v. *Melvin,* 53 N. C. 62, 63.)'." (*Matter of Byrnes* v. *Windels, supra,* p. 407.)

Even though one may be called a deputy, he is not a deputy within the meaning of the exclusionary provision of section 22 unless he is authorized by statute to act for and on behalf of the principal officer or unless his duties are prescribed by statute in such a manner as to make him in legal effect a deputy.

As has been pointed out above, there is no statute in this case which prescribes the duties of the deputy director of public works. On the contrary, the charter vests all the duties of the department in the director of the department, subject to the direction of the city manager.

In this state of the statutes, no assignment or allocation of duties by the director could make his subordinate a deputy within the meaning of section 22 and deprive him of the protection afforded by that statute (*Matter of Mercer* v. *Dowd, supra*). Furthermore, even if the duties which were assigned to the petitioner by the director were deemed to be relevant, it does not appear that the assignment was such as to make the petitioner a deputy in any real sense. The petitioner was in effect made the head of a bureau or division of the department, charged primarily with the supervision of the operation of certain municipal shops or plants, subject, however, at all times, to the control and direction of the head of the department. The director did not purport to authorize the petitioner to act for him and in his stead in connection with matters assigned to the deputy director or with respect to any other matters.

The petitioner's position was substantially that of an assistant to the head of the department. The fact that the word "deputy" was used in the title of the position rather than "assistant" is not of controlling importance (*Matter of Byrnes* v. *Windels, supra*).

In the case of *Matter of MacMaster* v. *Harvey* (265 N. Y. 555) it appeared that the petitioner had held the position of assistant commissioner of public works of the borough of Queens. He was the sole assistant of the commissioner and was next in authority to him (Greater New York Charter, § 383; L. 1901, ch. 466, as amd. by Local Law No. 1, 1929). He was removed without charges and, being a veteran of the World War, he brought a proceeding for his reinstatement. The Appellate Division denied the petition upon the ground of laches, almost three years having elapsed between the time of the petitioner's removal and the time of the institution of the proceeding, and also upon the ground that the New York City Charter authorized the removal of the commissioner of public works and his assistant "at the pleasure" of the appointing authority. (239 App. Div. 553.) The latter ground has since been held to be insufficient (*Matter of Mercer* v. *Dowd, supra*). The Court of Appeals affirmed the order denying reinstatement without opinion, but the following month, in its opinion in the case of *Matter of Byrnes* v. *Windels* (265 N. Y. 403, *supra*)

the court explicitly stated that the petitioner in the *MacMaster* case (*supra*) was not a deputy. (P. 410.) It is thus clear that the affirmance by the Court of Appeals was based solely on the ground of laches and that, if the proceeding had been promptly brought, the petitioner in the *MacMaster* case (*supra*) would have been reinstated.

Together with the *MacMaster* case (*supra*) the Court of Appeals decided the case of *Matter of Mafera* v. *Pasta* (265 N. Y. 552) in which the court unanimously affirmed an order of the Appellate Division (242 App. Div. 635) affirming an order reinstating the petitioner to the position of superintendent of parks. It was contended in that case that the superintendent of parks was a deputy of the commissioner of parks of the borough of Queens. It appeared that the superintendent had full charge of the supervision and maintenance of parks, the employment of labor and the construction of improvements in the parks and playgrounds. There was no position known as deputy commissioner of parks in the borough of Queens. The superintendent of parks was next in authority to the commissioner and, according to the respondent's affidavit: '' Whenever the Commissioner of Parks of the Borough of Queens was absent, either on vaction or otherwise, the Superintendent of Parks was designated by the Commissioner of Parks to act for and in the place of the Commissioner during the absence of such Commissioner of Parks, and while so acting in the place of the absent Commissioner of Parks, the Superintendent of Parks signed all official communications and all official orders of the Department in his capacity as such Acting Commissioner of Parks for the Borough of Queens '' (Record on Appeal, p. 15).

The Court of Appeals nevertheless held that the superintendent of parks was not a deputy of the commissioner of parks within the meaning of section 22 and the court ordered his reinstatement. In *Matter of Byrnes* v. *Windels* (*supra*) the Court of Appeals distinguished the position of assistant corporation counsel there under consideration from the positions held by MacMaster and Mafera and the court said: '' We, therefore, consider the position of this petitioner different from that of the other applicants who appeared before this court at the last session, in that they were not deputies, but held subordinate offices. (*Matter of Mafera* v. *Pasta,* 265 N. Y. 552; *Matter of Kiernan* v. *Ingersoll,* 265 N. Y. 553; *Matter of Murray* v. *Blanshard,* 265 N. Y. 554; *Matter of MacMaster* v. *Harvey,* 265 N. Y. 555.) '' (*Matter of Byrnes* v. *Windels, supra,* p. 410.)

In the later case of *Matter of Mercer* v. *Dowd* (288 N. Y. 381, *supra*) it appeared that the petitioner had been appointed the executive secretary of the Allegany State Park Commission. He was in effect the superintendent of the parks under the jurisdiction of the commission and was vested with extensive executive functions (see 288 N. Y. 385–386). In an effort to justify the removal of the petitioner, a veteran, without a hearing on charges, the respondents argued that he was a deputy within the meaning of section 22. Justice VAUGHAN, then at Special Term, now Associate Justice of the Appellate Division, Fourth Department, in an unpublished memorandum dated May 23, 1941, rejected this contention. Justice VAUGHAN pointed out that there was no provision in the statute for the delegation of the duties of the commissioners to any other person and concluded: " In the absence of statutory authority such duties may not be delegated to another. The immediate supervision and control is theirs and it is for the Commissioners to exercise their discretion as to the management of the parks and facilities used in connection therewith and to determine the policies to be adopted and followed in the management of the parks. An employee cannot legally be made a deputy by dispensation of his employer alone. There must be either a statutory authorization for the respondents to appoint a deputy who takes over and performs the duties vested in and imposed upon them or the statute must prescribe such duties for the employee as to make him in legal effect a deputy. In the matter under consideration we find no statute either creating the office of deputy or prescribing his duties.''

Justice VAUGHAN's order directing the reinstatement of the petitioner was reversed by the Appellate Division (263 App. Div. 932) but, upon appeal to the Court of Appeals, the Court of Appeals reversed the Appellate Division and affirmed Justice VAUGHAN's order. The Court of Appeals held that the petitioner's position was not that of a secretary within the meaning of section 22, although he was called an executive secretary, and the court also held that he was not an independent officer but was a subordinate employee of the commission, in view of the fact that the statute (Conservation Law, § 672) vested control and jurisdiction over the parks in the commissioners and the petitioner's duties were determined solely by the commissioners and not by any statute. The question of whether the petitioner was a deputy within the meaning of section 22 was also argued in the Court of Appeals and is referred to in the dissenting opinion. It is true that there is

no reference to this question in the majority opinion, but in affirming Justice VAUGHAN's order, the majority must necessarily have approved his conclusion that the petitioner was not a deputy, since the petitioner would not have been entitled to reinstatement if he were found to be either an independent officer, or a secretary or deputy within the meaning of section 22.

It is clear from the cases cited that in order to bring the petitioner's position within the statutory concept of a deputy, the respondents must show that there was some statute making the petitioner a deputy with authority to take over and perform the duties vested in the principal officer or that there was a statute authorizing the principal officer to delegate his duties and thus to create a deputyship.

In *People ex rel. Hoefle* v. *Cahill* (188 N. Y. 489, 497–498) it was stated: " We think that when the statute excepted from the limitations upon the power to remove certain persons like relator the office of deputy, cashier or private secretary, it contemplates only positions brought within these excepted classes by the terms of the laws which created or authorized and defined them, or at the most positions which under some sufficient authority at the discretion of the appointing or superior power have been invested with the duties and character of one of the excepted positions.''

The respondents rely upon section 122 of the Charter of the City of Niagara Falls as establishing that the petitioner was a true deputy. Unfortunately, a controversy has arisen as to the precise text of this provision. Section 122 of the charter as it appears in Local Law No. 6 of 1947 as that law was adopted by the city council, reads as follows: " One of the deputy directors of public works to be designated by the City Manager shall, during the temporary absence or inability of the director of public works, or during his suspension or a temporary vacancy, in his office, discharge the duties of said director.''

However, as the Local Law appears in the official publication of Local Laws issued by the Secretary of State for the year 1947, the section reads: " The city manager shall, during the absence or inability of the director of public works, or during his suspension or during a temporary vacancy in his office, designate an acting director of public works who shall discharge the duties of said director.''

It will be noted that under the section, in the form last quoted, the so-called " Deputy Directors of Public Works " have no prior claim to succession to the office of director, even temporarily, and that the city manager is free to designate

any person as the acting director during the suspension, absence or inability of the director. In the form first quoted, one of the two deputy directors is to be selected by the city manager to serve during the suspension, absence or inability of the director. In neither case, is either of the deputy directors authorized to succeed automatically to the duties of director. He may do so only if he is designated by the city manager.

Upon inquiry into the legislative history of the section, it appears that the Local Law as it was originally introduced, contained the language last quoted but after a public hearing had been held thereon pursuant to the provisions of section 13 of the City Home Rule Law (see Proceedings of the City Council of Niagara Falls, pp. 425, 637), the language of the section was changed so as to read as first above quoted and the Local Law was adopted in the amended form. The city clerk apparently failed to note the change and he sent a copy of the law as originally introduced to the Secretary of State for publication. Furthermore, it appears by the affidavit of one of the attorneys submitted upon this motion that the city clerk still has on file in his office, as a true copy of the Local Law, a copy of the law as originally introduced without any notation of the change which was made prior to its adoption.

The proceedings of the city council are controlling in the determination of the language of the Local Law. The Secretary of State is required by the City Home Rule Law (§ 22) to publish the local laws adopted by cities of the State but his publication cannot override the official record of the proceedings of the legislative body.

It may be argued that the change in section 122 of the charter after the holding of the public hearing was a substantial change and that the making of such a change after the holding of the public hearing was improper and that the adoption of section 122 in the altered form was therefore illegal under the provisions of the City Home Rule Law. However, it should be noted that section 122 purported to replace section 133 of the charter (L. 1916, ch. 530) and that this section contained substantially the same language as section 122 of the local law as finally adopted, the only difference being that the department had formerly been known as the department of public service instead of the department of public works and that the head had been called a superintendent instead of a director, and that the deputies had likewise been referred to as deputy superintendents instead of deputy directors. It may, therefore, be argued that if the proposed amendment failed of proper enact-

ment, the original provision of the charter on this subject remained in force and is now applicable to the department of public works, despite the slightly altered titles.

There is no need to reach a final conclusion as to the precise text of the charter provision now in force because, even if it is assumed that section 122 as amended had been validly adopted or that former section 133 is still in force, these provisions do not support the respondents' position. They do not authorize the deputy directors as such, or either of them, to take over and perform the functions of the director, automatically, in his absence, but they only make the deputy directors eligible for appointment or designation by the city manager to serve in the absence of the director. It is not enough to make one a deputy within the meaning of section 22 of the Civil Service Law that he may possibly be appointed such a deputy at some time in the future. He must in fact have become a deputy by virtue of the statute creating his position or by virtue of a designation or appointment during his occupancy of the position, in accordance with statutory authority, in order to bring him within the exclusionary provision of section 22.

It does not appear that the occasion for an appointment or designation of an acting director ever arose by reason of any suspension, temporary absence, or inability of the director and it does not appear that any designation or appointment was ever made by the city manager. The petitioner was not a deputy of the director at the time of his removal from his position or at any time prior thereto.

The respondents also rely upon section 9 of the Public Officers Law, which reads in part as follows: " If there is but one deputy, he shall, unless otherwise prescribed by law, possess the powers and perform the duties of his principal during the absence or inability to act of his principal, or during a vacancy in his principal's office. If there be two or more deputies of the same officer, such officer may designate, in writing, the order in which the deputies shall act, in case of his absence from the office or his inability to act, or in case of a vacancy in the office, and if he shall fail to make such designation, the deputy longest in office present shall so act."

First of all, it should be noted that this section applies only if it is not " otherwise prescribed by law ". In this case, the city charter contains a provision, the exact nature of which is in doubt, but which, in any event, requires a designation or appointment by the city manager before anyone can act in place of the director of public works.

It should also be noted that the first sentence of the provision above quoted applies only "if there be but one deputy". In this case, there are two so-called deputy directors. The second sentence quoted above applies to a case where there are two or more deputies, but this sentence provides that, in the absence of a designation by the principal officer, the senior deputy shall act in the absence or inability of the principal officer. The petitioner in this case was the junior deputy of the two deputy directors and therefore the respondents can gain no support from section 9.

Finally, it is questionable whether section 9 would apply even to the senior of the so-called deputy directors in this case. Section 9 does not apply to every position which bears the title of deputy. It does not purport to convert every such position into a true deputyship merely because of the use of the word "deputy". Section 9 merely defines the powers of the deputy and prescribes the order of succession, where the position is that of a true deputy under the terms of the statute creating the positions: "It is clear from a reading of the foregoing section that the deputies contemplated by such section are deputies who have the power and duty to act for their principal in case of his absence or inability to act." (*Matter of Steen* v. *Nassau County,* 179 Misc. 821, 823, affd. 265 App. Div. 858, *supra.*)

The respondents rely greatly upon the case of *Matter of Byrnes* v. *Windels* (265 N. Y. 403, *supra*), but that case is plainly distinguishable. The position there involved was that of assistant corporation counsel. The New York City charter provided in part: "Any assistant corporation counsel shall, in addition to his other powers, possess every power and perform all and every duty belonging to the office of the corporation counsel, or so much of such duties as the corporation counsel shall deem it necessary to delegate whenever so empowered by said corporation counsel by written authority * * *." (Greater New York Charter, § 256; L. 1901, ch. 466, as amd. by L. 1917, ch. 602.)

In view of this provision, the court concluded (pp. 408–409): "We are of the opinion that these Assistant Corporation Counsels, given by the charter additional powers, to wit, ' every power and perform all and every duty belonging to the office of the corporation counsel, or so much of such duties as the corporation counsel shall deem it necessary to delegate,' became deputies within the meaning of the exception to the provisions of section 22."

The position of assistant corporation counsel is a unique one. Every litigated matter placed in the hands of an assistant corporation counsel must be handled by him as a lawyer representing the city with all the authority which an attorney has in representing his client. He is thus a true deputy of the corporation counsel. Furthermore, as the court points out, the corporation counsel cannot get along with only one deputy; '' there must be numerous lawyers to handle this work '' and '' while doing it, they act very largely upon their own responsibility ''. (*Matter of Byrnes* v. *Windels, supra,* p. 409.) The petitioner who sought reinstatement in the *Byrnes* case (*supra*) had necessarily served as the deputy of the corporation counsel pursuant to statutory authority throughout his term of office.

The dissimilarity of the *Byrnes* case (*supra*) and this case is too obvious to require extended comment. In the *Byrnes* case (*supra*), there was a continuing relationship of principal and deputy between the corporation counsel and the assistant corporation counsel, the assistant corporation counsel being empowered by statute to exercise the full authority of the corporation counsel, even while the latter was actually present and able to act. Nothing of that kind appears in the present case.

Finally, reference is made by the respondents to section 13 of the Civil Service Law defining the positions which may be exempted from civil service examination. The first subdivision of section 13 provides for the exemption of '' the deputies of principal executive officers authorized by law to act generally for and in place of their principals ''.

The respondents submit an affidavit by the secretary of the municipal civil service commission in which it is argued that if the duties of the petitioner were '' actually not those of a true Deputy, then the original appointment of the petitioner, Thomas D. Heath, was illegal and void for the reason that if his duties were clerical, ministerial and subordinate, the office shall have been classified in the Competitive Class and subject to written examination ''. This argument is not referred to in the respondents' brief and has presumably been abandoned by the respondents, but it may be briefly considered here. First of all, it is questionable whether the classification of the position in the exempt class by the municipal civil service commission may be collaterally attacked at this time in this proceeding for the purpose of challenging the validity of the original appointment of the petitioner. The petitioner was appointed pursuant to the municipal civil service commission's classi-

fication of the position as an exempt one and that classification has not been revoked by the commission nor has it been challenged by the city or any of the other respondents. The municipal civil service commission is not a party to this proceeding.

Furthermore, under subdivision 5 of section 13 of the Civil Service Law, the commission is authorized to include in the exempt class '' all other subordinate offices or positions for the filling of which competitive or non-competitive examination may be found to be not practicable ''. The fact that the position is found to be one other than that of a deputy does not preclude its classification in the exempt class (*Matter of Byrnes* v. *Windels, supra; Matter of Mercer* v. *Dowd, supra*).

I find that the position held by the petitioner was not that of a deputy within the meaning of the exclusionary provision of section 22 of the Civil Service Law. The petitioner is therefore entitled to the protection of section 22. The petitioner should be reinstated to the position of deputy director of public works of the city of Niagara Falls with back pay from the time of his removal.

Submit order accordingly.