Donald Cummings, Respondent, v. City of Norwich, Appellant.

Third Department, November 16, 1955.

*James W. Coleman, City Attorney,* for appellant.

*Joseph Pozefsky* for respondent.

HALPERN, J. This case illustrates the need for a tightening up of the practice under which local laws are adopted by municipalities under the home rule provisions of the New York State Constitution (art. IX, § 12) and the City Home Rule Law.

The plaintiff brought an action against the City of Norwich for personal injuries alleged to have been sustained on April 17, 1954, when his automobile ran into deep holes or cave-ins in a public highway in the city. It is alleged that the pavement at the place in question had been allowed " to be and remain in an unsafe and dangerous condition " and that " the said defendant had notice and knowledge thereof, actual or implied by law, and negligently and wrongfully suffered the same to remain in said dangerous and unsafe condition and wholly failed in any manner to repair said hole and excavation and cave-in ".

The defendant city moved to dismiss the complaint for insufficiency upon its face, upon the ground that the complaint did not sufficiently allege compliance with two alleged sections of the Charter of the City of Norwich. Section 242 of the charter, as enacted by chapter 34 of the Laws of 1914 and amended by chapter 815 of the Laws of 1953, provides in part: " Said city shall not be liable for damages or injuries to person or property alleged to have arisen or to have been sustained from or in consequence of a defective or unsafe condition of any sidewalk, street, highway, crosswalk, paving, opening, bridge or culvert, drain or sewer, until five days after actual notice to the mayor of the city of such defective or unsafe condition."

While the language of the section is not as clear as it might be, the only reasonable construction of it seems to be that the city is not liable for damages or injuries sustained by reason of a defective or unsafe condition of a sidewalk, street or highway unless actual notice of such defective or unsafe condition had been given to the Mayor at least five days prior to the occurrence

of the accident. Despite the harshness of a provision of this type, it is the settled law of this State that it is valid, whether adopted in a legislative charter (*MacMullen* v. *City of Middletown,* 187 N. Y. 37), or by a local law under the City Home Rule Law (*Matter of Ellis* v. *City of Geneva,* 259 App. Div. 502, affd. 288 N. Y. 478; *Fullerton* v. *City of Schenectady,* 285 App. Div. 545, affd. 309 N. Y. 701). There is no allegation in the complaint that actual notice had been given to the Mayor five days before the occurrence of the accident, in compliance with section 242.

Both at Special Term and in his brief and upon the oral argument in this court, the attorney for the defendant city asserted that there was another section of the charter, compliance with which he claimed had not been sufficiently alleged in the complaint. He set forth in his brief the full text of the alleged section 243 of the charter, which provided in part: "A civil action shall not be maintained against the city for damages or injuries to person or property sustained in consequence of any street being defective, out of repair, unsafe, dangerous or obstructed unless it appear that written notice of the defective, unsafe, dangerous, obstructed condition of such street was actually given to the city engineer, and that there was a failure or neglect within a reasonable time after the giving of such notice to repair, or remove the defect, danger or obstruction complained of, or, in the absence of such notice, unless it appears that such defective, unsafe, dangerous or obstructed condition existed for so long a period that the same should have been discovered and remedied in the exercise of reasonable care and diligence."

It will be noted that under this section constructive notice to the city may suffice in lieu of actual notice. It is difficult to reconcile this section with section 242, since the provision for constructive notice under section 243 is meaningless, if actual notice is required in any event under section 242. Nevertheless, the attorney for the city contended that both sections applied to this case and he argued that the complaint was insufficient, not only for failure to allege actual notice to the Mayor under section 242 but also for failure to allege sufficiently that the defective condition had continued for so long a period of time as to charge the city with constructive notice.

The Special Term held that the allegations of the complaint were sufficient to charge constructive notice in compliance with section 243. With this, we are in agreement. The Special Term did not mention section 242 in its memorandum but we may assume that the court held, in effect, that section 242 with its strict requirement of actual notice in advance of the occurrence

of an accident had been superseded by the more liberal provisions of section 243, which allowed constructive notice to suffice in lieu of actual notice. The city's motion for dismissal of the complaint was accordingly denied.

An appeal was taken by the defendant to this court and the appeal was argued both by the plaintiff and the defendant upon the assumption that section 243 had been validly adopted as part of the city charter and that it was applicable to this case.

However, after the oral argument, the defendant's attorney discovered that the alleged section 243, quoted in his brief, had never been adopted and he so advised the plaintiff's attorney and the court. The defendant's attorney had apparently relied, in the first instance, upon a printed copy of the charter which had been officially published by the city in 1954. Apparently, a draft of Local Law No. 10 of 1954 had been prepared at one time including the proposed section 243 but in the form in which the local law was actually adopted by the common council, and approved by the Mayor, section 243 was omitted. By mistake, when the text of the printed charter was prepared, the original draft of the proposed local law was used instead of the final draft as approved by the legislative body and hence section 243 was erroneously included in the printed charter.

Local Law No. 10 of 1954, as it appears in the proceedings of the common council, contains no reference to the proposed section 243. It contains a new section 244 which is in substance a re-enactment of section 243 of the legislative charter, with some changes. That section deals with limitations upon the powers of the officers of the city and has no bearing upon the problem with which we are here concerned.

Local Law No. 10 of 1954, as adopted by the common council, provided that it should not take effect until it was submitted at a special election to be held pursuant to Local Law No. 1 of 1954 and unless it received the affirmative vote of a majority of the qualified electors. A special election was held on May 15, 1954, at which Local Law No. 10 and a number of other local laws were approved. The abstract of Local Law No. 10, which was published in advance of the election, listed the titles of the sections of the charter affected by the local law with a brief statement of the nature of the amendments. The abstract did not contain any reference to section 243.

The city clerk did not file a copy of the local law in the office of the Secretary of State or in the office of the State Comptroller within five days of its taking effect, as required by section 22 of the City Home Rule Law, but he filed a certificate about a year

later, purporting to certify the text of the local law. Instead of attaching a copy of the local law, as enacted by the common council and approved by the Mayor, he attached copies of pages torn out of the printed city charter which, as we have seen, erroneously contained the proposed section 243 which had never been adopted.

To add to the comedy of errors, it turns out that, so far as this case is concerned, it is immaterial whether or not the proposed section 243 had been adopted as part of the Local Law No. 10 of 1954. As has been noted, Local Law No. 10 in its entirety did not become effective until it was approved by a majority of the qualified electors at a special election held on May 15, 1954. The accident involved in this case took place on April 17, 1954, about one month before the taking effect of Local Law No. 10.

The filing of correct copies of local laws in the Secretary of State's office is a matter of grave importance since, under the home rule provisions of the Constitution and the City Home Rule Law, municipalities have the power to enact laws within prescribed limits which have the same force and effect as statutes adopted by the Legislature. This case is not an isolated instance of a discrepancy between the local law as enacted by the city council and the certified copy of the law as filed in the office of the Secretary of State. In *Heath* v. *Creagh* (197 Misc. 537, affd. 276 App. Div. 948) it appeared that the City of Niagara Falls had transmitted to the Secretary of State a copy of a local law differing materially from the local law as enacted by the city council. (See, also, *Matter of Ellis* v. *City of Geneva,* 259 App. Div. 502, affd. 288 N. Y. 478, *supra.*)

The City Home Rule Law (§ 22) provides for the filing of local laws in the office of the Secretary of State and in the office of the State Comptroller and for the annual publication of local laws by the Secretary of State but, of course, this provision gives no assurance of accuracy if the municipal authorities file erroneous copies of the local laws. Under the present statute, the failure to file, or the filing of an erroneous copy, does not affect the validity of the law as enacted by the local legislative body (*Matter of Ellis* v. *City of Geneva, supra*; *Heath* v. *Creagh, supra*).

The public may thus be bound by a local law, the correct text of which is not on file in the designated State offices and is not contained in the annual volume of local laws published by the Secretary of State. Personal and property rights of great value may be dependent upon the exact text of a local law. The

proper functioning of the judicial process may be impeded, as it has been in this case, by discrepancies between the laws as adopted and the laws as filed.

The situation is one which calls for prompt remedial action. That there is a need for the exercise of greater care by the municipal authorities in preparing and certifying the text of local laws is self-evident. Action may also be necessary by the State officers and, possibly, by the Legislature, in order that the public may be assured that the local laws on file are the ones adopted by the local legislative bodies. We call attention to the situation for such action as may be deemed proper.

So far as this case is concerned, we are constrained to reverse the order appealed from and to hold that, in the absence of any additional or superseding section, section 242 of the legislative charter, which was in force at the time of the accident, is solely controlling. The allegations in the complaint are not sufficient to charge actual notice in accordance with section 242 and the complaint must therefore be dismissed. However, it is possible that the plaintiff may be able to establish that the city had actual notice or that the city was itself responsible for the creation of the defect (*Crandall* v. *City of Amsterdam*, 254 App. Div. 39, affd. 280 N. Y. 527). The plaintiff should, therefore, be given leave to amend the complaint.

The order appealed from should be reversed and the defendant's motion granted and the complaint dismissed, without costs, with leave to the plaintiff to serve an amended complaint within twenty days after the entry of the order herein.

FOSTER, P. J., BERGAN, COON and ZELLER, JJ., concur.

Order reversed and the defendant's motion granted, and the complaint dismissed, without costs, with leave to plaintiff to serve an amended complaint within twenty days after the entry of the order herein.